UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
Case No. 24-43203-ess

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:

ETIENNE ESTATES AT WASHINGTON LLC,

Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

United States Bankruptcy Court
271-C Cadman Plaza East
Brooklyn, NY 11201

March 12, 2026
3:34 p.m.

B E F O R E :
HON ELIZABETH S. STONG
U.S. BANKRUPTCY JUDGE

ECRO: Unknown

HEARING re [5] Adj Status Conference. Adjourned from 3/4/26.

HEARING re [129] Adjourned Motion to Compel JJAM Capital LLC to comply with its statutory closing obligations. Filed by J Ted Donovan on behalf of Etienne Estates at Washington LLC. Adjourned from 3/4/26.

HEARING re [175, 183] Motion to Dismiss Case filed by Debtor Etienne Estates at Washington LLC.

HEARING re [176] Application for Compensation filed by Attorney Goldberg Weprin Finkel Goldstein LLP.

HEARING re Adjourned [179] Motion to Dismiss Case Filed by Johanna Francis. Adjourned from 3/4/26.

Transcribed by: Rita Weltsch

A P P E A R A N C E S :

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLC
Attorney for Debtor
125 Park Avenue, Floor 12
New York, NY 10017

BY: J. TED DONOVAN

RICE & BUSH LLP
Attorney for JJAM Capital LLC
711 3rd Avenue, 20th Floor
New York, NY 10017

BY: DAN M. RICE

U.S. DEPARTMENT OF JUSTICE
Office of the United States Trustee
One Bowling Green, Room 510
New York, NY 10004

BY: JEREMY S. SUSSMAN

RUBIN LLC
Attorney for Northgate Real Estate Group
11 Broadway, Suite 715
New York, NY 10004

BY: HANH V. HUYNH

ALSO PRESENT:
JOHANNA FRANCIS

P R O C E E D I N G S

CLERK: Calling Matters 64 through 68 on the calendar, Etienne Estates at Washington LLC, 24-43203. Appearances: Ted Donovan, Dan Rice, Johanna Francis, Han Huynh, Jeremy Sussman, and Ms. French. Oh, Ms. French left. Okay.

THE COURT: Thank you. Good afternoon. Everyone, we have called the matters in the Etienne Estates at Washington case. Including the status conference, the motion to compel, the motion to dismiss, the compensation request, the motion to dismiss. Lots of things.

And we'll begin by getting the appearances on the record, please, beginning here in the courtroom. Mr. Donovan for the debtor.

MR. DONOVAN: Your Honor, Ted Donovan. Goldberg Weprin Finkel Goldstein for the debtor. Also present is Ms. Francis who is the principal of the debtor.

THE COURT: Thank you. Good to have you here, Ms. Francis. Mr. Rice, JJAM Capital, if I've said that right.

MR. RICE: Yes. Dan Rice of Rice & Bush for JJAM Capital.

THE COURT: All right. Thank you. Mr. Sussman, Office of the United States Trustee.

MR. SUSSMAN: Good afternoon, Your Honor. Jeremy Sussman on behalf of the United States Trustee.

THE COURT: All right. We have an interested party, Ms. French, is that correct?

CLERK: Judge, she left.

THE COURT: Or not.

CLERK: And Mr. Huynh.

THE COURT: Mr. Huynh for Northgate.

MR. HUYNH: That's correct, Your Honor.

THE COURT: There you are.

MR. HUYNH: Good afternoon. Han Huynh, Rubin LLC on behalf of Northgate Realty Group.

THE COURT: All right. Thank you. I look at my screen and look at the tables. Good to have everybody. All right. Let's begin with status and lets hear from Mr. Donovan. And let me say, it's not a new case, but I think a new case for me.

So, I'm eager to hear. You can -- you can begin at the beginning. Don't leave anything out, but do respect the passage of time. But I need to be brought up to date on this case. A lot of things --

MR. DONOVAN: Your Honor --

THE COURT: -- going on in this case at the --

MR. DONOVAN: Excuse me. Ted Donovan. Where to begin? This is a second filing. If we go back a ways, there was a dispute over the mortgage, which -- for reasons which we've never quite figured out, was issued by First

Central Savings Bank as a home loan, rather than a HELOC, rather than a commercial loan.

And there were a number of other issues with it. The borrower is listed as Johanna Francis, even though the loan was made to the debtor. The debtor is entitled to the property. The property is a house that's been occupied by Ms. Francis and her family for most of her life.

We did a cure and reinstatement plan that was confirmed. There were some issues that arose during COVID with respect to default in payments. Ultimately, Judge Lord dismissed the case, keeping in place the confirmed plan, and said, if there are issues you guys can't work out, deal with it in state court.

There was a foreclosure action commenced in state court. Notwithstanding that Judge Lord had specifically found in the confirmation order, and in a transcript at the confirmation hearing after, I would say, a five day trial plus another -- I'm thinking -- the debt and what the cure amount was. There was another several day hearing on the confirmation objections.

And ultimately, she said that this was -- the HELOC was in fact the mortgage going forward. That this was an individual loan, personal loan rather than a commercial loan. And all the provisions of real property procedures act protect individual home owners applied.

A foreclosure action was commenced. It was commenced in supreme court in the commercial part. After a number of motions and disputes, the upshot was that the commercial part held that it was a commercial loan, and entered a judgement of foreclosure and fixed the amount of the debt.

There were numerous disputes over the referee's report, fixing the amount of the debt. All of that ended up with a judgement. There was an appeal filed. A stay was sought pending the appeal. And the initial application for the stay was denied in favor of having it heard by the entire panel.

And by the time the entire panel was going to hear it, the foreclosure sale had already been scheduled. So, a second --

THE COURT: So, there was no stay.

MR. DONOVAN: And there was no stay. So, the bankruptcy -- second bankruptcy was filed for the purpose of getting the stay. Early on in the case, we moved to lift the stay so the appeal could go forward and we could challenge the underlying judgement.

There was a cross motion by JJAM which had purchased the note during the course of the first bankruptcy to lift the stay so they could go ahead with the sale. Judge Lord essentially declined to rule on either motion,

and gave a series of deadlines by which the debtor was to either sell the property, or refinance, or do something to pay this off.

Ultimately, the -- a sale was scheduled. I don't remember the dates anymore, but the sale was scheduled. A day before the sale, a refinancing took place and JJAM was paid off in full on the amount of the judgement.

At that point, we sought to confirm the plan which was a toggle plan, we'll either do this or that. And at the last hearing, Judge Lord declined to sign the confirmation order which JJAM disputed the language.

THE COURT: Right.

MR. DONOVAN: There's nothing here that the parties have not disputed each other's claims --

THE COURT: It seems.

MR. DONOVAN: -- from the get-go. But in essence, Judge Lord said that because there was never a sale, there was a refinance -- she wasn't comfortable confirming a plan that had those options in it.

THE COURT: It had a toggle.

MR. DONOVAN: She wanted us to start over again with a new plan.

THE COURT: Would the debtor like to come out of this owning the property?

MR. DONOVAN: The debtor owns the property.

THE COURT: Still owning the property?

MR. DONOVAN: And the debtor has refinanced it with a hard money loan. And at this point -- which is actually refinanced by Ms. Francis on behalf of the debtor. But in any event, JJAM's been paid --

THE COURT: Does JJAM agree that JJAM has been paid in full?

MR. DONOVAN: Yes. Yeah. There's no fight over that. The argument has to do with language in the confirmation order which --

THE COURT: We have two confirmation orders, I think.

MR. DONOVAN: Well, yeah.

THE COURT: Isn't that right? Two proposed --

MR. DONOVAN: The --

THE COURT: We have no confirmation orders. We have two proposed confirmation orders.

MR. DONOVAN: Right.

THE COURT: I think. Is that right?

MR. DONOVAN: Right. The fight over the confirmation orders has to do with language because at this point, the intent is to go back to state court and complete the appeal and challenge the amount of the debt and seek to --

THE COURT: Which is the HELOC debt, is that

right?

MR. DONOVAN: The HELOC. And to seek to claw back the overpayment if Ms. Francis is found to be correct. And --

THE COURT: And who -- who is the lender on the HELOC?

MR. DONOVAN: The lender on the HELOC was --

THE COURT: Who's the creditor?

MR. DONOVAN: -- First Central Savings Bank, which sold the note to JJAM.

THE COURT: So JJAM has been paid in full and maybe paid in full and then some.

MR. DONOVAN: That's right.

THE COURT: According to the debtor, not according to JJAM.

MR. DONOVAN: Right. And so, that issue is teed up in the state court with a pending appeal. Once the stay is lifted, that will go forward.

THE COURT: In a general way, is it a matter of public record what the two numbers are?

MR. DONOVAN: No.

THE COURT: What was paid and what is believed to be what's owed?

MR. DONOVAN: Not really.

THE COURT: Okay. I didn't remember seeing it in

the record. I do remember --

MR. DONOVAN: No.

THE COURT: -- seeing the issue in the record.

MR. DONOVAN: There are a whole series of issues and we've never specifically quantified what they are.

THE COURT: Okay.

MR. DONOVAN: Other than, you know, there are charges that we're saying weren't proper. There was interest that wasn't calculated properly.

THE COURT: Interest on interest. Who knows what.

MR. DONOVAN: It's never gotten down to a dollar versus dollars.

THE COURT: So --

MR. DONOVAN: But in any event, Your Honor, getting past that for a moment. At this stage, Ms. Francis owns the property. She can't live in the property because in order to get the hard money loan, the company had established that it was a non-owner occupied premises. So, she can't live in her own house and she's paying --

THE COURT: Because she took a loan. A condition of which was that she not --

MR. DONOVAN: Right.

THE COURT: -- treat it as her own house. That's not a --

MR. DONOVAN: Right. That's -- okay. She's also

-- because it was --

THE COURT: So, that was a decision and a choice.

MR. DONOVAN: Right, absolutely. It was also a -- because it was a hard money loan, there was a -- you know, a substantially high interest rate. And she's in the process of trying to refinance that. She has a commitment for the refinance. And one of the conditions of the commitment is that the bankruptcy case be closed.

THE COURT: Closed or dismissed?

MR. DONOVAN: Or dismissed, over. So, at this point, the choice was go ahead with confirmation, or waive going ahead with confirmation and dismissing the case. Now, let me just back up.

THE COURT: What is the status of confirmation?

MR. DONOVAN: There were conflicting orders. Judge Lord said she wasn't going to sign any -- either one.

THE COURT: I did my best to understand the status of confirmation and could not tell whether the plan was confirmed submit order, or we are working on confirmation, let's see what a confirmation order would look like. Was it the first or the second of those two?

MR. DONOVAN: It was the second, but --

THE COURT: Okay.

MR. DONOVAN: -- at the last hearing when she had both orders in front of her, she -- Judge Lord stated that

she did not believe that she could confirm the plan in its current state because with the way that it had this toggle and it didn't go forward.

THE COURT: So, the plan --

MR. DONOVAN: So, we would have --

THE COURT: -- has not been confirmed.

MR. DONOVAN: The plan has not been confirmed --

THE COURT: Does the debtor intend to pursue confirmation of a plan?

MR. DONOVAN: No. The debtor wants to dismiss the case. Because, if I could go back for a moment, talk about other creditors here.

THE COURT: Yeah. I'm trying to get a sense of the work -- the Chapter 11 work that would need to be done in the case.

MR. DONOVAN: You have to write a new plan. You have to write a new disclosure statement. And it would essentially say, JJAM got paid and the other prepetition debt, there's only one -- I believe there was some minor taxes and Con Ed bill, all that stuff got paid as part of the closing and the refinancing. The only thing that was --

THE COURT: So, those got paid.

MR. DONOVAN: Right. Was all paid. There was no pre-petition debt --

THE COURT: Pre and post-petition.

MR. DONOVAN: At the --

THE COURT: I assume you had to pay current to whatever post-petition utilities had accrued, for example.

MR. DONOVAN: Right. All those things got resolved at -- anything that was out there, real estate taxes, it all got resolved out at the closing.

THE COURT: And about how long ago was that?

MR. DONOVAN: April of last year.

THE COURT: Almost a year.

MR. DONOVAN: Right?

MS. FRANCIS: April 29.

MR. DONOVAN: 29. Last year.

THE COURT: So, about a year ago.

MR. DONOVAN: Yes. Okay.

THE COURT: Got you.

MR. DONOVAN: Now, there is one pre-petition debt that's remaining that's a non-insider debt. There's a bunch of insider loans through different companies that Ms. Francis owns, or her family owns, that had loaned money to the debtor over the years.

There's only one non-insider debt, and that is Catherine French's debt. If I remember correctly, it's $60,000. She is a friendly creditor and --

THE COURT: I'm sorry. And her name is again?

MR. DONOVAN: Catherine French.

THE COURT: Catherine French. Got it.

MR. DONOVAN: And she was willing to have the case dismissed and work out how she's going to get paid down the line. There's no need to confirm a plan just to deal with her debt.

MS. FRANCIS: Excuse me, Your Honor. I --

MR. DONOVAN: And -- excuse me.

THE COURT: Let's let counsel continue and then you can confer with counsel.

MR. DONOVAN: Attached to Ms. Francis's motion to dismiss is a statement from Ms. French saying that she consents to the dismissal.

THE COURT: And that's the only remaining --

MR. DONOVAN: Pre-petition debt.

THE COURT: What about admins?

MR. DONOVAN: Okay. There's two admin debts. One is the broker commission and one is my firm's fees. Now, if I could just address them and let everybody argue about the broker's commission --

THE COURT: They're both on the calendar today, right?

MR. DONOVAN: -- (indiscernible) and I just want to tell you what --

THE COURT: They're both on the calendar.

MR. DONOVAN: -- where we stand.

THE COURT: The broker's fee is $10,000 --

MR. DONOVAN: Right. What happened is the --

THE COURT: -- and you seek your compensation as retained counsel.

MR. DONOVAN: Right. Judge Lord granted the motion by the broker to be paid. That was a reduced amount from what they originally sought. It's roughly $10,000. There might've been some change in there. There was a -- there was an appeal filed of that by Ms. Francis.

THE COURT: I recall that.

MR. DONOVAN: Okay. Judge Lord sought -- she sought a stay pending appeal from Judge Lord that was denied. She sought a stay pending appeal from the district court.

The initial application was denied. The district court set it down for further briefing, but that's not for another few weeks. And the appeal has to be perfected through the filing of Ms. Francis's briefs tomorrow.

So effectively, by the time the stay gets heard, the appeal will be, you know, in front of the judge on the merits. So, that has to either be paid or --

THE COURT: Right. Because the court ordered --

MR. DONOVAN: There's a court order in this court.

THE COURT: -- an administrative claim.

MR. DONOVAN: Or -- or it has to get -- if the

case were to be dismissed without further order from this court, it would have to get resolved in a state court if it wasn't paid at the end of the appeal. I said, that's not my issue as the debtor's attorney and I'll let the other parties talk about the ins and outs of that.

MR. RICE: Your Honor --

MR. DONOVAN: The -- the other --

THE COURT: Mr. Donovan, you can continue.

MR. DONOVAN: Okay.

THE COURT: Everyone will have their time, don't worry.

MR. DONOVAN: Okay. The other open issue before the case can get dismissed is my firm's fees. We filed a application for fees. I filed on the docket this morning a letter indicating that we were reducing our fee request by $4,300. Among other things, Mr. Khodorovsky --

THE COURT: I -- yes --

MR. DONOVAN: -- pointed out to me that I had a six hour entry that should've been six tenths.

THE COURT: Oops.

MR. DONOVAN: Oops. So, we made some reductions that he asked for, and we're also asking for about $25,000 in expenses. It's very high because it includes the costs that we had to lay out to get the appeal filed. In state court you have to use public --

THE COURT: The state court appeal.

MR. DONOVAN: State court appeal. You have to use publishers to do everything.

THE COURT: (Indiscernible). Yes, I recall.

MR. DONOVAN: We waived our pre-petition --

THE COURT: I'm surprised.

MR. DONOVAN: We waived our pre-petition fees to the extent that they weren't paid prior to the filing, but we reserved our right on the expenses. So, what I'm looking for today, Your Honor, is --

THE COURT: What is more or less the counsel fee? All in?

MR. DONOVAN: It --

THE COURT: I know that, I just don't have it --.

MR. DONOVAN: It's $94,000 plus $25,000 worth of expenses, in rough numbers.

THE COURT: Got it.

MR. DONOVAN: It's in my letter specifically within (indiscernible).

THE COURT: Yes. The total appears to be about $124,000.

MR. DONOVAN: All right. There was one other motion out there that I'll talk about in a minute. But what we're looking for, Your Honor, is to dismiss the case, fix my fees, dismiss the case, and let the issue with the -- the

fight with JJAM go be played out in the appellate court and let the collection of the funds be dealt with in the state courts, whether it's A, an appeal; and B, they have rights to enforce the court order there.

There's one other motion that was pending, that's why Mr. Rice is on the phone, on the --

THE COURT: Yes.

MR. DONOVAN: -- thing. At the closing with JJAM, JJAM did not immediately provide a satisfaction. There were all sorts of issues which I will not bore the Court with, about -- they provided -- they turned over ultimately a satisfaction.

It wasn't acceptable to the title company. We asked it to be changed. They filed papers that were incorrect. They didn't -- there were all sorts of efforts to fix it, which ultimately left the thing with -- in worst case -- worst situation than we started with.

And also, they never turned over the original loan documents as we believe they're required to do. We made a motion to compel. I thought that motion was decided by Judge Lord at the last hearing, she -- but I was correct.

What she said was that it probably was something that should go to state court, because it's an entirely state court statute that we were suing under to compel them to give us these things. And I say, well, then are you

abstaining? And she said, well, I might abstain, I might grant it, I might deny it. I'll leave it up to Judge Stong.

Our view at this point is, we need to get rid of the hard money loan. We need to get this property out of bankruptcy.

THE COURT: But you're not seeking to confirm the plan.

MR. DONOVAN: So we're -- no. We're seeking to --

THE COURT: You're seeking to dismiss.

MR. DONOVAN: -- dismiss the case. Having dealt with all of the issues that need to be dealt with, if Your Honor grants my fees, that's dealt with. Catherine French has said she consents to dismissal and she'll deal with her claim outside of bankruptcy.

And there's already been an order entered to pay the broker's fees. And they can -- if they don't get paid in the way they want to get paid, they can certainly go -- it's equivalent to a judgement.

They can go and they can enforce it in state court. But it's important before we lose the refinancing commitment and are stuck with this high interest hard money loan, and also, Ms. Francis would like to move back into her -- the house she's lived in her whole life, or most of her life.

So, that's why we're trying to just dismiss the

case and cut through it. And our view is, at that point, we'll just mark the motion to compel withdrawn and refile to the extent it's necessary in state court and pursue that in state court. And it doesn't need to be resolved in bankruptcy court if the case is otherwise dismissed.

So, that's why we think the case is ready to be dismissed and can be dismissed.

THE COURT: Subject to consideration of your application for --

MR. DONOVAN: My application and --

THE COURT: -- compensation.

MR. DONOVAN: -- and also, the objections filed by Northgate, Mr. Huynh's client.

THE COURT: The objections filed by Northgate with --

MR. DONOVAN: Through the dismissal because they want to get paid here.

THE COURT: Well, Northgate is the broker.

MR. DONOVAN: Yes, the broker.

THE COURT: The broker has been awarded -- there is a fee awarded. It's on appeal.

MR. DONOVAN: Yes.

THE COURT: So, that doesn't seem like a reason to continue the case or not to continue the case. That seems to be something pending in the district court.

MR. DONOVAN: And that was my reaction. And again, that's why I thought we could get the case dismissed.
THE COURT: So --
MR. DONOVAN: And I don't see that there's any reason not to get this done today. I know the -- because we were trying to do things quickly, Your Honor entered an order that said that this would be a preliminary hearing. But I --
THE COURT: Conference is probably the word.
MR. DONOVAN: Conference. But it just seems to me that these are all issues that are readily resolvable one way or the other today.
THE COURT: Well, just --
MR. DONOVAN: That said, I'll let everybody else --
THE COURT: -- (indiscernible) --
MR. DONOVAN: -- tell me why I'm wrong.
THE COURT: To review what I -- first, thank you. It's helpful. A long messy complicated road got us here. As of the moment though, at 3:56 on March something, 12th maybe, I see that the creditor JJAM has been paid or overpaid. And that question is in the district court, correct?
MR. DONOVAN: The -- that's in the First Department.

THE COURT: No, no. I'm sorry. Where is that question?

MR. DONOVAN: First Department. Second Department. I'm sorry.

THE COURT: That's in -- that's right. In the -- on appeal but in the Second Department. And but -- paid or overpaid. Other pre- and post-petition amounts but only through April 2025, as to the post-petition admins, are paid through that date. Ms. French, I've read the submission, has indicated -- yes. Ms. French consents to the dismissal and she's been paid.

MR. DONOVAN: She hasn't been paid, but she'll work it out.

MS. FRANCIS: No, I paid her.

MR. DONOVAN: Oh, you did pay her. Okay.

THE COURT: Reading the document for the avoidance of doubt, "I, Catherine Ann French, hereby acknowledge receipt of $60,000 and full satisfaction of my claim against Etienne Estates at Washington." This is from March --

MR. DONOVAN: Okay.

THE COURT: -- this is from about ten days ago. So, Ms. French, we have that. The broker fee has been the subject of a decision and an order by the bankruptcy court and it's on appeal.

Counsel fee is before me today. Dismissal is

before me today. That seems like the picture. Mr. Donovan, from your perspective, have I missed anything?

MR. DONOVAN: No, Your Honor. I would just note that we did make -- again, I just want to note we made the adjustment to our fee application at the request of the U.S. Trustee.

THE COURT: Yes. And the debtor seeks dismissal and the debtor's principal seeks dismissal. Dismissal seems to be the -- from that side of the -- from the debtor's table, that seems to be the view. Let's hear from Mr. Sussman.

MR. SUSSMAN: Your Honor, sorry to interrupt Mr. Donovan. So, I just -- I wanted to just raise the fact that there's a missing piece of the puzzle here which is U.S. Trustee fees.

The debtor owes $22,537 in U.S. Trustee fees. It's our strong position that that needs to get paid before the case gets dismissed. This is a case where the -- it's my understanding there's a significant amount of equity in this property. Not a case where the property is massively under water, or has to be sold at a loss. There's a lot of equity here.

I understand the debtor wants to dismiss the case so that it can refinance at a lower interest rate, but it's not a reason for leaving administrative creditors, including

the U.S. Trustee in the lurch.

You know, I think -- but for the appeal, I also think, you know, with respect to the broker, the broker did work in the case, agreed to a significant reduction and its fees were awarded --

THE COURT: Yeah.

MR. SUSSMAN: -- by the court and the notion that a professional that does work in the case gets fees awarded, and then has to go to state court to enforce that award particularly, in a case where the debtor's not administratively insolvent, but has a lot of equity, I think is troubling.

But I do understand in this case, you know, that there is a -- there's an appeal of that. And maybe it's not a reason to keep the case open, but certainly with respect to U.S. Trustee fees, they need to be paid. Thank you.

THE COURT: Mr. Donovan, that sounds right to me. Anything to say in response?

MR. DONOVAN: Your Honor, there was an issue with respect to the trustee fees. We had sought a -- I contacted Mr. Khodorovsky and then Mr. Zipes a couple of months ago.

There's a dispute over whether they're entitled to all the fees that they were seeking, because the refinancing was not the debtor's. It was Ms. Francis. And since she's listed as the borrower, it was her debt that was getting

paid.

Although, the -- and they were taking a position that the debtor was getting the benefit of the payment to JJAM. And therefore, they were entitled to fees on it. And the last I heard, Ms. Francis and Mr. Zipes were discussing it. And I don't know what the status of that is.

THE COURT: This is the loan that you indicated at the outset was for some reason in the name of Ms. Francis, though it was actually --

MR. DONOVAN: Yeah. Your Honor, and that --

THE COURT: -- the debtor's loan?

MR. DONOVAN: At that closing, we put all that in the operating report and said we don't think we have to pay fees on it. And the U.S. Trustee said, yes, you do.

THE COURT: Okay. Well, that needs to be resolved before the case can be dismissed, I think.

MR. DONOVAN: Well, I would rather let Ms. Francis address that.

THE COURT: I'm not -- the debtor is represented by counsel, Mr. Donovan.

MR. DONOVAN: Ms. Francis is the one that is --

THE COURT: It's an observation from the Court. That issue seems to me, needs to be addressed before the case can be dismissed. That's not an issue I can just cut loose.

I would be -- I routinely sign dismissal orders, proposed orders that are prepared by the U.S.T. that indicate that any missing monthly operating reports and fees will be paid. This is a dispute.

I would be irresponsible to sign a dismissal saying, and I hope -- I wish you luck with resolving that issue. I'm not going to do that.

MR. DONOVAN: I understand that, Your Honor. I'm just saying, that with respect to this issue, because Ms. Francis is the one that's paying it, I would ask the Court to let her address it rather than me.

THE COURT: Is it something that's still --

MR. DONOVAN: The debtor's attorney.

THE COURT: -- being worked out between the U.S.T. and the -- and the debtor's principal? That's a question for debtor's counsel. In fact, it's a question for debtor's counsel. Is it still being worked on? You don't need to negotiate on the record. It wouldn't be right for me to ask you to negotiate on the record.

MS. FRANCIS: I was just going to explain the situation, Your Honor.

MR. DONOVAN: You need to go to the podium where everybody can hear you.

MS. FRANCIS: She -- does she want me to?

THE COURT: Soon, not yet. Mister --

MR. DONOVAN: Your Honor, I don't know the answer to the question.

THE COURT: Mr. Sussman, anything further?

MR. SUSSMAN: Yes, Your Honor. Just one other issue is that the debtor's insurance has expired, at least the insurance we had. The insurance we had proof of is expired. So, we need proof of renewed insurance. I think it's been expired for quite some time now.

THE COURT: I have no reason to doubt the insurance was renewed. Let's get that -- when did it expire?

MR. SUSSMAN: September of 2025.

THE COURT: I'm sure it was renewed. Can you get the evidence of the renewed insurance over?

MR. DONOVAN: Yes, Your Honor.

THE COURT: Thank you. So, this has been so helpful. I have a much better sense of what remains to be addressed in the case.

And my goal is to make that list and work through that list. Evidence of continued insurance to the U.S.T. by the end of next week. Hopefully, sooner. Just get it done. That's an easy issue. That's probably the easiest issue we've got. And I assume the debtor is the named payee as the party protected by the insurance that will be --

MS. FRANCIS: No. It's a homeowner's insurance

and then I cover the company.

THE COURT: That'll be something to address with the U.S.T. as well because the debtor needs to be the named party. Mr. Sussman, I think I have that right, but you can add anything you'd like to add as to that insurance. I assume it was satisfactory before; if you renewed what you had before, hopefully, we're in a good place.

So, JJAM paid or overpaid other pre-imposed petition amounts. Admins were current a year ago, it seems. We need to be sure they're still current. Utilities, taxes, things like that.

We have the consent of Ms. French, who's been paid, to dismissal. Broker's fee questions. Not before me, it's on appeal. Nothing for me to do. It would be inappropriate when an order is on appeal. We have the question of the counsel fee.

And we have some other parties who'd like to be heard. Anything further, Mr. Donovan? Don't worry, you're next. Anything further, Mr. Donovan?

MR. DONOVAN: No, Your Honor.

THE COURT: All right. At this point, anything you'd like to add, Ms. Francis?

MS. FRANCIS: Just --

THE COURT: The podium is helpful because that way the people who are participating remotely can hear you.

MR. DONOVAN: Speak into the microphone.

MS. FRANCIS: With respect to insurance, I have insurance. So, I'll be happy to send a copy. They --

THE COURT: All right. You can provide it to Mr. Donovan to provide to the U.S.T. just to follow the usual path.

MS. FRANCIS: With respect to the trustee -- the trustee fee, originally when this was calculated, we were speaking with Mr. Khodorovsky. And then I believe Mr. Zipes had sent Mr. Donovan an email, because it was a question of how to resolve it.

Because the money that paid off JJAM, actually did not flow through the debtor. So, it goes somewhat into trustee guidelines.

THE COURT: So, the parties are working on that.

MS. FRANCIS: That's something -- I haven't seen -- yes.

THE COURT: Okay.

MS. FRANCIS: I will follow up.

THE COURT: Good to know. Debtor -- it's the debtor's obligation. The debtor is represented by counsel, taking nothing away from your importance.

You're critical as the principal of the debtor, but the debtor is an entity and is represented by counsel. So, that communication needs to go -- I urge you to have it

go that way, Mr. Donovan.
MS. FRANCIS: Mr. Donovan was a party to the conversation --
THE COURT: Excellent.
MS. FRANCIS: -- with the trustee.
THE COURT: Okay. Good.
MS. FRANCIS: The issue within this, is the debtor does not have money. Any money that is being paid is my personal money. So, this is where the caveat is. I don't mind honoring something if I believe it's correct. I think I've already demonstrated that I do so. But this is not -- this is a company that owns nominal title to my house. It's --
THE COURT: That was a choice. The company filed Chapter 11. Things go along with that, here they are.
MS. FRANCIS: No. And I --
THE COURT: We're almost done. We're so close.
MS. FRANCIS: And I respect that. And then -- and then that's fine. And I don't think you had asked about anything else.
THE COURT: No. Those were the -- literally and figuratively, I've made a list and we're working through it. And this has been very helpful. And we're almost done.
MS. FRANCIS: Okay. But I do want to note that my commitment is expired. So, every day that this goes on, and

respectfully, it should've been dismissed last year when their alleged claim was paid. Every moment that this goes on, it's a problem.

And the way that I prefaced my dismissal was a little bit different than the way Weprin did. Is I asked for it to be dismissed, and I asked for you to keep discretion over anything that you felt was appropriate.

THE COURT: I tend not to do that in the context of a dismissed case. Subject matter jurisdiction is fundamental to the operation of a federal court, including this one. And so, I understand how urgently you wish the case dismissed. There's a process.

MS. FRANCIS: Okay. I understand that. And I also --

THE COURT: Everyone's doing their best.

MS. FRANCIS: Also on the record --

THE COURT: And the U.S.T. fees will need -- that will need to be resolved, whether you reach an agreement or I make a decision. That will need to be resolved, in my view, highly likely, before the case is dismissed.

MS. FRANCIS: Okay. And then the other thing is, is that we do need to come to some type of terms within Weprin, because I did not agree for them to base my dismissal off of their fee application. And I --

THE COURT: I didn't understand what you just

said.

MS. FRANCIS: I said I did not consent for them to put in something that conditions my dismissal on their fee application.

THE COURT: There's no condition to a dismissal. I'm considering both matters. I'll make the decisions on each matter.

MS. FRANCIS: No, no, no. I'm just being clear that what I asked for, and what they asked for, is slightly different because it needs to be gone over. I'm not --

THE COURT: I'm sorry. Because of?

MS. FRANCIS: I need to go over their fees.

THE COURT: You may certainly -- you may file a response.

MS. FRANCIS: Yeah, no. I haven't had a chance to look at it. I haven't had a chance to do anything. So --

THE COURT: When was the fee application filed?

MS. FRANCIS: It was just filed on the first.

THE COURT: Just a couple days ago, maybe.

MR. DONOVAN: On the first.

THE COURT: Okay.

MS. FRANCIS: You know, so -- and I apologize --

THE COURT: That would've been ten days or so. All right.

MS. FRANCIS: I'm writing --

THE COURT: Okay. Everyone will have an opportunity.

MS. FRANCIS: Yeah. I'm just writing the appellate brief. So, it's not -- I don't have the bandwidth.

THE COURT: Are you an attorney?

MS. FRANCIS: No.

THE COURT: Okay. All right. Well. So, thank you. Anything further, Ms. Francis?

MS. FRANCIS: No, I appreciate your time and attention.

THE COURT: Okay. And yours, of course. Mr. Sussman, anything further from the U.S.T. before we hear from the various other parties who are here?

MR. SUSSMAN: Nothing further, Your Honor. Thank you.

THE COURT: All right. Thank you. Mr. Huynh, here in the courtroom. Let me hear from you.

MR. HUYNH: Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. HUYNH: Han Huynh, Rubin LLC on behalf of Northgate, the broker in this case. Your Honor, I'm not going to address any of the merits of the fee order. As you correctly stated, it is before the district court.

THE COURT: I know.

MR. HUYNH: But that fee -- I just want to make a couple of points. That fee order, it's not stayed. It's very clear. Fees were to be paid by the debtor within seven days of entry of that fee order. There's no stay of that.

The motion for a stay was denied. It should be paid, Your Honor. We would like the chance -- the opportunity, if we need to, to compel the compliance with that order. We are a creditor. We're an administrative creditor.

I understand that the debtor and its principal would like the case to be dismissed. And I understand that, while technically this isn't a structured dismissal, it's in spirit, a debtor attempting to pick and choose which creditors it wants to pay before getting rid of the case.

And to tell us, Northgate, you can just go to state court to collect on your fee, I think as the U.S. Trustee pointed out, that is not a precedent we want to be setting for professionals who have their fees approved, who have orders entered saying, pay these fees within seven days.

Now, you know, given the amount at issue here, Your Honor, admittedly, it is a $10,000 compensation order. We don't take lightly filing motions to compel. On top of that, procedurally, in this case, we're in between judges. So, we weren't sure which way to go, where to file that.

But, Your Honor, we'd like that opportunity to be able to have this Court enforce its order where there's been a willful violation with compliance with this order. And we are a creditor that would be prejudiced.

And with respect to, you know, 1112 motions to dismiss, even where there's cause, I think the Court looks to the interests of creditors. It's not the interests of debtors. It's the interests of creditors, and we are a creditor. We're an approved creditor.

There is no dispute we are an allowed administrative creditor. And we would be prejudiced if we were told, go to state court to enforce this bankruptcy court order, Your Honor.

THE COURT: All right.

MR. HUYNH: That's all I have unless you have questions.

THE COURT: All right. Thank you. No, it's helpful. Leaving the courtroom, onto the screen. Let's hear from Mr. Rice for JJAM.

MR. RICE: Good afternoon, Your Honor. Dan Rice, Rice & Bush for JJAM. Just very quickly, a few of the things that Mr. Donovan said on behalf of debtor, we think are incorrect. Judge Lord after a five day trial, found this was not a consumer loan. That's number one to bring to your attention. Secondly, if I recall correctly --

THE COURT: Where is that in the record? Just to help me as I try to get up to speed in this 2024 case that was reassigned to me.

MR. RICE: I'm not sure it's in the record in front of me here. This was -- this was years ago. And --

MR. DONOVAN: 2017.

MR. RICE: I don't know if maybe Mr. Donovan can help us out on that.

THE COURT: It's a 2024 case.

MR. RICE: It was many years ago. It was a five day trial in the first bankruptcy --

THE COURT: I'm so sorry. In the first bankruptcy. That makes more sense. You had me there for a moment. That's -- that is officially years ago. Back to you.

MR. RICE: Yeah. Unless I'm getting confused, which is possible. I'm appearing just one day here because the attorney who's regularly handling this is on a plane.

THE COURT: Oh, goodness.

MR. RICE: Unfortunately.

THE COURT: Okay.

MR. RICE: The bottom line though is, there was a trial in front of Judge Lord. And I did conduct the trial. And the outcome of that trial was that the -- she ruled that it was a -- not a consumer loan. And that affected the

amount that was due under the mortgage.

THE COURT: Okay.

MR. RICE: Aside from that, it's not the critical thing I want to say. Also on the note, the debtor did sign the note along with Ms. Francis. I'm just correcting a few factual aspects that were told you before.

But I would say, in terms of the motion to dismiss, we have no objection to it. In terms of the motion to compel, this is the tail of the tail of the tail of the dog.

At this point, I think it would be an economy for everyone involved were the motion simply adjourned to the ultimate dismissal of this matter, and sent to state court. Because it's a very convoluted statute.

It contemplates a state court remedy. And this Court, Judge Lord already issued a decision, Number 98, that declared without the need for any further action or order from the court upon receipt of the entire dollar amount it says there, by JJAM, any indebtedness held by JJAM, as well as any liens, are deemed satisfied and discharged.

So, the purpose of that state statute has been met. So, this motion is really aimed at getting ahold of the actual note. And considering that Ms. Francis has declared repeatedly that she wants to try to claw back money, something which I don't believe she's entitled to,

and these orders don't really permit her to do, I believe.

But the bottom line is, this is such a minor aspect of this proceeding that -- assuming that a dismissal occurs, it should go back to state court. And if it's a matter of adjourning it for a month or two until there is a dismissal, I don't see a problem with that.

I think that's really all I have to say, Your Honor, at the moment.

THE COURT: I had a question with respect to the motion to compel JJAM to comply with statutory closing obligations.

And since it seems like there'd been a closing, maybe we -- that could be marked off, but we'll get to that. That may have been me getting ahead of the record as I try to get my arms around a record that is a fairly complicated record.

We've heard from those in the courtroom. We've heard from Mr. Rice. We've heard from Mr. Sussman. I think maybe we've heard from everyone on status, is that correct? Seems so.

So to recap, the debtor would like to dismiss. The U.S.T. needs its fees paid, and I tend to agree with that. So, you know. There's a question as to what that amount is. I think the parties need to address that.

There are fees that have been awarded to a

professional. They're on appeal. There are fees sought by the debtor's counsel. And that may be the next thing I should consider.

I am not satisfied that there is yet, today, a basis to proceed and grant the motions to dismiss. There is too much unfinished business in my view. I'm prepared to proceed promptly, and I urge the parties to do the same.

To address any outstanding issues that appear to the Court to be part of the picture and getting to closure. One of those would be the U.S.T. fee situation. I'm not going to dismiss the case with that as an open question.

So, that's -- if that's helpful, now you know. That's -- and we're coming toward the end of the quarter. There's 19 days left in Q1. So, as to status, we clearly will have an adjourn date.

The motion to compel. This is the debtor's motion. Let me hear you. Noting the hour and the countless individuals awaiting their 230 loss mitigation status conferences.

You can address at a high level what I had thought was a motion that might be behind us. Mr. Donovan, let me hear from you. It's your motion.

MR. DONOVAN: Your Honor, I think that you just -- if you're not going to dismiss the case today, it should be carried.

THE COURT: What is it that you're asking the Court to direct JJAM to do to?

MR. DONOVAN: To -- well, there's two different things here. One, is because they never gave a proper satisfaction, we want the Court to direct either that they give a proper satisfaction, or one of the provisions in the statute provides that the Court can direct the person that paid the debt, to act as an attorney in fact, and file their own satisfaction. The other thing is, we want the notes.

THE COURT: Why would the notes be your -- be something you're entitled to?

MR. DONOVAN: Because we paid them off and they -- the law couldn't be clearer on that.

THE COURT: So, they should be marked cancelled or something like that, right?

MR. DONOVAN: They should be turned over to the person that pays the debt. And the statute is very clear on that in our view. Their whole argument is, well, we don't want to give them to you, because we might need them down the road for the appeal.

And I'm like, yeah, but there should be our -- we might need them for the appeal as well. And they should be in our possession because we paid the debt. And the statute says you turn the notes over.

And it is standard practice in the state of New

York that the notes get turned over at the closing. And it didn't happen. I did not handle the closing.

THE COURT: And are the --

MR. DONOVAN: I don't know why the closing attorney allowed it to close without getting his hands on the notes, but it did.

But, I don't think it needs to get resolved today. And I don't want to waste any more of the Court's time on what is in effect an important side issue, but a side issue to getting the case closed.

If the case is going to stay open for any length of time, then maybe we'll want to have the Court address that as well. But if all we have to do is resolve three payments -- the U.S. Trustee, the broker, and my fees -- I think we can be out of here in a week or two. And I don't want to waste time on the motion to compel.

THE COURT: All right. Thank you. At a high level, Mr. Rice, you can respond. I have your opposition. Why would you still have the note if it's been paid?

MR. RICE: Because in a sense, the case is not over in state court. Ms. Francis wants to claw back money.

THE COURT: Yes.

MR. RICE: It's a piece of evidence.

THE COURT: Which would happen with appropriate due process, it sounds like. Was the money tendered to the

client, or is it being held in an attorney escrow account?

MR. RICE: The money went to the client. JJAM was paid off.

THE COURT: Well, then what's -- then how do you respond to Mr. Donovan's argument?

MR. RICE: Well, in short --

THE COURT: I appreciate it gives you a perception of leverage, but I'm not sure that's something that the law supports.

MR. RICE: We just -- yeah. Bluntly, we want to protect the evidence. If we end up having the appeals court come out with some kind of decision that says we'd have to relitigate some aspect of this, then the note is part of our prima facie case.

THE COURT: Where is the note right now?

MR. RICE: It's either held by -- I believe it's either held by a principle of JJAM, or my partner Michael Bush. I don't remember which one has it at the moment.

THE COURT: All right.

MR. RICE: One of them has it.

THE COURT: I think it might be an appropriate interim step for that note to be held in escrow by the counsel for JJAM. Any objection to that?

MR. RICE: Not from me.

THE COURT: You're JJAM's counsel. That's all I

need to know.

MR. RICE: Right. Yeah.

THE COURT: So --

MR. RICE: And Mr. Bush as well. We both --

THE COURT: On consent. JJAM Capital. There are serious trust issues here, it seems to me. And I don't mean like, the law of trust. I mean, like trust between the parties.

I'm doing my best to make progress on that, but at the end of the day, I'll also make the decisions I need to make. On consent, JJAM Capital to -- counsel for JJAM Capital to obtain.

MR. DONOVAN: Your Honor, it's notes, mortgage documents, it's all of it. Not just --

THE COURT: Note and mortgage. And to file status letter. I'm going to ask you to get it by the end of next week, by March 20. I expect compliance.

I'm going to so order the record and to file a status letter --

MR. DONOVAN: Your Honor --

THE COURT: -- with respect to location of note by the following Monday, March 23rd. Once you get through the weekend.

MR. RICE: Your Honor, can we have just a little bit more time? Because I'm getting on a plane on March

18th. And the regular attorney's coming back on March 22nd. So, just to make sure we don't drop the ball in terms of submitting the proper letter.

THE COURT: I'll give you more time --

MR. DONOVAN: Your Honor --

THE COURT: -- on the letter. I'd like the note -- the document is the focus. I'll give you -- when would you like for the status letter?

MR. RICE: If you could make it like March 25th, or 27th. Something like that.

THE COURT: That's fine. March 25th is fine. March 20th to get it. March 25th --

MR. RICE: Okay.

THE COURT: -- file that status letter. I appreciate it takes time even to write a straightforward letter. And that is so ordered.

MR. DONOVAN: Your Honor, excuse me. We have to --

THE COURT: And we'll have an adjourn date.

MR. DONOVAN: We have to be clear about this. There are like six notes. There's like seven mortgages. It has to be all of them, note and mortgage.

THE COURT: Between JJAM and --

MR. DONOVAN: No. Because that's half the problem with this case. She kept -- over the years, the note was --

THE COURT: I'm aware of this aspect of the record.

MR. DONOVAN: -- refinanced.

THE COURT: It's the note that JJAM is seeking to enforce --

MR. DONOVAN: No.

THE COURT: -- that would be the issue, it seems to me. Not its predecessors.

MR. DONOVAN: The note that they're seeking to enforce is one of six separate notes that was assigned to them over the time. And the issue -- part of the fight here, is that the assignments were never properly effectuated. There's a consolidated mortgage that was never filed. That's the fight over the satisfaction.

THE COURT: Whatever you've got. Whatever you've got. Notes and mortgages by March 20th to counsel to be held securely. And a status letter indicating what that is.

MR. DONOVAN: That's fine, Your Honor.

THE COURT: And if what we see is, well, you have three or you have 23. We'll see whatever it is. All right.

MR. RICE: Yes, Your Honor.

THE COURT: And they'll be in counsel's hands, which can relieve any concerns about integrity of evidence or a process. So. And we'll have an adjourn date, because we're not done with this issue, obviously.

With respect to the motion to dismiss, I'm not going to dismiss this case today. I'm not going to dismiss it on either motion. I appreciate the grounds. I'm not going to deny the motion to dismiss either. I'm going to adjourn the motion to dismiss.

The thing -- there are open questions in the case that need to be addressed and resolved before I will be satisfied that dismissal is appropriate. Dismissal is of course opposed. I will invite each of you to state what you'd like to state, and feel you need to state today, as to dismissal. I'll say it again. I'm neither granting nor denying that motion today.

So, back to the debtor and then the debtor's principal. Mr. Donovan, anything to add?

MR. DONOVAN: No, Your Honor. I would just like -- once the Court sets the adjourn date, I'd like a deadline by which the debtor and/or Ms. Francis, have to file their opposition to our fees, if there is any opposition.

THE COURT: We'll set a schedule. Ms. Francis, anything to add?

MS. FRANCIS: Your Honor, I'm currently --

THE COURT: Get on mic.

MS. FRANCIS: I'm currently in a hard money loan, so if the alternate is not to dismiss it, may I put in, what is that, the document, so that I can have permission to

refinance? That's what we did --

THE COURT: You can file whatever is permitted by the code and rules.

MS. FRANCIS: Is that something?

MR. DONOVAN: That's a post-confirmation loan. I don't know if the Court even has to approve it.

THE COURT: We don't have a confirmation order. I would not --

MR. DONOVAN: You're right. We don't.

THE COURT: We're not confirmed 'til we're confirmed.

MR. DONOVAN: So, yeah, you'd have to make a motion to approve the financing.

MS. FRANCIS: Okay.

THE COURT: I'll encourage debtor and client -- client and counsel to confer off the record. That's --

MS. FRANCIS: Okay.

THE COURT: You should not have to talk on the record.

All right. Here in the courtroom, anything, Mr. Huynh, on the motions to dismiss?

MR. HUYNH: Nothing to add, Your Honor.

THE COURT: All right. Thank you.

Mr. Sussman on the motions to dismiss, anything to add?

MR. SUSSMAN: Nothing to add, Your Honor. I'm sorry, Your Honor. Did you give the next hearing date?

THE COURT: Not yet.

MR. SUSSMAN: All right -- okay.

THE COURT: Mr. Rice on the motions to dismiss, anything to add?

MR. SUSSMAN: Nothing to add, Your Honor. Thank you.

THE COURT: Mr. Rice, how about you? Anything to add?

MR. RICE: No, Your Honor.

THE COURT: All right, thank you.

I don't see a path to getting this case done in the first quarter, much as I would love to. You have things to do. I don't -- Mr. Donovan, let me look to you. What is your -- what would be your assessment of how much time is necessary so that the loose ends can be tied up by the time we come back?

MR. DONOVAN: I have no idea, Your Honor. It's entirely up to Ms. Francis. She's the one that's dealing with all these issues. It's her objection to the payment of the fees to the U.S. Trustee. It's her objection to the allowance of the claim --

THE COURT: All right. All right.

MR. DONOVAN: -- and it's her objection to my

fees.

THE COURT: All right, I get the picture.

Mr. Sussman, let me hear from you.

MR. SUSSMAN: I'm not sure, Your Honor, but I want to clarify with respect to U.S. Trustee fees, it's our -- we've taken the position that the debtor owes us fees and it's really the debtor and debtor's counsel who should be negotiating with us with respect to that and not the debtor's owner. Thank you.

THE COURT: I tend to agree. This is an obligation of the case. Of course, debtor's counsel is going to be guided by his client, the debtor's principal, but as a structural matter, that is -- it is -- it makes sense. They are debtor obligations.

And I think I've now checked with everyone, so I'll just come up with a date, and I'll either do it now or I'll do it later.

Ms. Jackson, should we address scheduling later? Okay. I knew you would say that. I -- hard as it is to do scheduling in the moment, I really think it -- in a way it saves time.

I -- late in the day on Monday the 27th of April?

MR. DONOVAN: I told you. I told you.

THE COURT: I would give you an earlier date if I had it, and even then I mean late in the day. You're coming

in late after a long morning with other matters already scheduled, an afternoon with matters already scheduled, and then two matters at the loss mitigation calendar. We still have a loss mitigation calendar today. Probably not responsible for me to suggest that date. Let me keep looking. It may be later.

MR. DONOVAN: I remain hopeful that all these issues can be resolved consensually and that will greatly --

THE COURT: That will change dramatically the scheduling issues.

MS. FRANCIS: May I ask a question, Your Honor?

THE COURT: Now, I -- yes, you may.

MS. FRANCIS: Okay. So, the U.S. Trustee, we can speak --

THE COURT: You need to be on mic or people won't be able to hear you.

MS. FRANCIS: With respect to the U.S. Trustee, Mr. Donovan can speak to the trustee's office. I'm usually CC'd on it, so we can kind of resolve that. He had an idea while we were sitting here that might be okay with them.

THE COURT: Excellent. Good luck.

MS. FRANCIS: The insurance I will get a copy to them today, because I'm not understanding why they didn't have it before.

THE COURT: Good.

MS. FRANCIS: With respect to the notes, thank you for doing that. I appreciate that, and that could be continued. Is there anything else? I believe he --

THE COURT: I have contested fee applications, it seems.

MS. FRANCIS: If you look at --

THE COURT: Ma'am --

MS. FRANCIS: Okay. I'm not try -- I --

THE COURT: -- I'm doing my best. I do not under --

MS. FRANCIS: I know you are.

THE COURT: What would you like to state on the record?

MS. FRANCIS: So, what I -- so, all I'm stating -- I'm just trying to understand what the outlining issues are so that we could try to get it done before the next adjournment.

THE COURT: I will do my best to give you a summary. The debtor is represented by counsel. It is counsel's job to advise the debtor not the court's. I would be going --

MS. FRANCIS: Okay. I'm appearing as party in interest. I'm not --

THE COURT: What do you mean by that, ma'am?

MS. FRANCIS: I'm a party in interest.

THE COURT: Of course you are.

MS. FRANCIS: Okay.

THE COURT: You are also the principal of the debtor.

MS. FRANCIS: Yes, I understand.

THE COURT: If you need separate counsel to advise you as the debtor's principal, I urge you to get that counsel.

MR. DONOVAN: Your Honor, she had separate counsel, and the counsel resigned yesterday.

THE COURT: Oh, that's right. All right. I can't be your counsel. My ability to answer your questions, even as party in interest, is highly constrained by my role as the judge in the case.

MS. FRANCIS: I can respect that. I was just trying to make sure that I understood what needs to transpire so that we can move forward. That's all I'm asking. I listen to everything, and I listen to everybody. I respect your position. I respect --

THE COURT: I don't have a position, actually.

THE COURT: Okay. Well, I respect what you said.

THE COURT: Thank you. I don't take positions.

MS. FRANCIS: So, I'm trying to understand.

THE COURT: I have to make decisions. You have positions. I make decisions.

MS. FRANCIS: Okay. I'm just --

THE COURT: I do have a role it. If that's what you mean by position, of course, I understand.

MS. FRANCIS: I'm just trying to understand how to move forward.

THE COURT: So, we were looking at April --

MR. DONOVAN: 27th.

THE COURT: -- 27th. My concern about that date is that there's a very long calendar already in place. I mean, I'm reluctant to tell you come at 4:30. That just doesn't seem fair to my colleagues. So, I'm now looking at May 4th, the following Monday, and I'm thinking that's probably our best bet given the time requirements of this case. We'll say 1 p.m. on May 4th.

If things are resolved in a way that we could change that date, I will not be disappointed, but otherwise, as for status, May 4th at -- Ms. Jackson, am I missing something on this day? It looks strangely open, actually. May 4th at 1.

Sometimes it turns out it's a federal holiday when I have a wide open day, so I'm not aware of a holiday landing on that day. I've noted your appearances, and I've made detailed notes about what we need to work on here.

And just for the sake of a clear record and help everybody, it seems that we need to work on -- that other

courts are working on appeals. The Appellate Division Second Department appears to have one appeal, and the District Court appears to have another appeal, and so those are matters there, not here.

It appears that we are working on how to get this case from here to done, whether it's through confirmation of a plan, which is always a useful thing in a Chapter 11 case where the plan can serve a purpose or not. We'll see.

But in order to complete the case, whether it is confirmed and closed, and there can be advantages to a confirmation, or whether it is based on the entire record after appropriate notice, hopefully on consent, dismissal seems to make sense. Things that would need to be addressed would include but not be limited to any unpaid admins or administrative expenses. Those are -- that's a way to say the expenses that began once the case was filed. That includes counsel fees and fees that are on appeal, and it includes the U.S. Trustee fees, things like that.

It is -- they are occasionally, not often, contested. They are -- when they are contested, there's usually a result that can be found. I'll just offer that as a suggestion or as a general observation based on lots of cases.

So -- and there may be other things, but those are kind of top-of-the-list obstacles between here and done.

Mr. Sussman, did I overlook any other matters of note?

MR. SUSSMAN: I don't believe you did, Your Honor. Thank you.

THE COURT: All right.

MR. DONOVAN: If I could just make one more observation, Your Honor?

THE COURT: You may.

MR. DONOVAN: I intend to reserve all rights to amend our fee application since it will --

THE COURT: Well, it's taking more time. That's the thing. That's why I'm not considering it today, because there's going to be more fees.

MR. DONOVAN: No, I understand. I'm just -- I just want to make the record clear that I'm not going to be doing anything in the future for free.

THE COURT: Passage of time is -- yeah. All right. So, motion to dismiss, noting your appearances May 4th at 1, which is actually not as far off as it sounds.

The application for compensation May 4th at 1, again noting your appearances, and the motion to dismiss of debtor's principal May 4th at 1. And let me just add this. There's been a lot of disputes here. There's been a spectacular number of disputes.

When I reviewed the record to try to get up to speed on the 60-something new cases that were transferred to

me upon the official and final retirement of my colleague at the stroke of midnight on February 28th, this is probably one of the most -- the one that has caused the most court attention to be paid to it.

And one of my goals in this case is that we get the smoothest possible path from here to done. We are no longer creating value for much of anybody as far as I can tell. Even the lawyers have plenty of other cases to do. Certainly Ms. Francis wants to be done.

I urge you to think in terms of solving the problem, getting this case from here to done sooner than later. If you get everything resolved and we can somehow get this done in quarter one, I will do everything I can to get you on my calendar.

I can't do it without you. I need you to move ahead, and I'll make every decision I need to make in the case. Don't doubt it for a moment, but you may do a better job at that than I do. So, just saying. Thank you very much. Good luck.

(Whereupon these proceedings were concluded at 4:35 PM)

C E R T I F I C A T I O N

I, Rita Weltsch, certified that the foregoing transcript is a true and accurate record of the proceedings.

Rita Weltsch

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date: March 23, 2026

**&**

**&** 3:10 5:20 37:21

**1**

**1** 55:14,19 57:18,19,21
**10,000** 17:1,7 36:22
**10004** 3:20 4:4
**10017** 3:6,13
**11** 4:3 14:14 32:15 56:7
**1112** 37:5
**11201** 1:14
**11501** 59:23
**12** 1:16 3:5
**12151** 59:6
**124,000** 19:21
**125** 3:5
**129** 2:4
**12th** 23:20
**175** 2:9
**176** 2:12
**179** 2:15
**183** 2:9
**18th** 46:1
**19** 41:14

**2**

**20** 45:17
**2017** 38:6
**2024** 38:2,9
**2025** 24:8 29:12
**2026** 1:16 59:25
**20th** 3:12 46:12 47:16
**22,537** 25:16
**22nd** 46:1
**23** 47:20 59:25
**230** 41:18
**23rd** 45:22
**24-43203** 1:3 5:3
**25,000** 18:22 19:15
**25th** 46:9,11 46:12
**271** 1:13
**27th** 46:10 51:22 55:7,8
**28th** 58:2
**29** 15:11,12

**3**

**3/4/26** 2:2,7,16
**300** 59:22
**330** 59:21
**3:34** 1:17
**3:56** 23:20
**3rd** 3:12

**4**

**4,300** 18:16
**4:30** 55:10
**4:35** 58:21
**4th** 55:12,14 55:17,19 57:18 57:19,21

**5**

**5** 2:1
**510** 3:19

**6**

**60** 57:25
**60,000** 15:23 24:18
**64** 5:2
**68** 5:2

**7**

**711** 3:12
**715** 4:3

**9**

**94,000** 19:15
**98** 39:16

**a**

**ability** 54:12
**able** 37:2 52:16
**absolutely** 13:3
**abstain** 21:1
**abstaining** 21:1
**acceptable** 20:13
**account** 44:1
**accrued** 15:3
**accurate** 59:4
**acknowledge** 24:17
**act** 7:25 42:8
**action** 7:14 8:1 39:17
**actual** 39:23
**actually** 10:4 27:9 31:12 54:20 55:18 57:18
**add** 30:5,5,22 48:14,20 49:22 49:25 50:1,6,7 50:10 57:21
**address** 16:18 27:18 28:11 30:2 35:23 40:24 41:8,20 43:12 51:18
**addressed** 27:23 29:18 48:7 56:13
**adjourn** 41:15 46:19 47:24 48:5,16
**adjourned** 2:1 2:4,7,15,16 39:12
**adjourning** 40:5
**adjournment** 53:17
**adjustment** 25:5
**admin** 16:16
**administrative** 17:24 25:25 36:8 37:11 56:15
**administrativ...** 26:11
**admins** 16:15 24:8 30:9 56:14
**admittedly** 36:22
**advantages** 56:10

**advise** 53:20 54:6
**affected** 38:25
**afternoon** 5:7 5:24 6:9 35:19 35:20 37:20 52:2
**ago** 15:7,13 24:21 26:21 30:9 34:19 38:5,10,14
**agree** 10:6 33:23 40:22 51:10
**agreed** 26:4
**agreement** 33:18
**ahead** 8:24 13:11,12 40:14 58:16
**ahold** 39:22
**aimed** 39:22
**alleged** 33:2
**allowance** 50:23
**allowed** 37:10 43:5
**alternate** 48:24
**amend** 57:9
**amount** 7:19 8:5,8 9:7 10:23 17:6 25:19 36:21 39:1,18 40:24
**amounts** 24:7 30:9
**ann** 24:17
**answer** 29:1 54:12
**anybody** 58:7
**anymore** 9:5
**apologize** 34:22
**appeal** 8:9,10 8:20 10:23 11:17 17:9,12 17:13,17,20 18:3,24 19:1,2 20:3 22:21 24:6,24 26:2 26:14 30:14,15 41:1 42:20,22 56:2,3,17
**appeals** 44:11 56:1
**appear** 41:8
**appearances** 5:4,12 55:22 57:17,20
**appearing** 38:17 53:22
**appears** 19:20 56:2,3,5
**appellate** 20:1 35:4 56:1
**application** 2:12 8:10 17:15 18:14 22:9,10 25:5 33:24 34:4,17 57:9,19
**applications** 53:4
**applied** 7:25
**appreciate** 35:10 44:7 46:15 48:3 53:2
**appropriate** 33:7 43:24 44:21 48:8 56:12
**approve** 49:6 49:13
**approved** 36:18 37:9
**april** 15:8,11 24:8 51:22 55:6
**argue** 16:18
**argument** 10:9 42:18 44:5
**arms** 40:15
**arose** 7:9
**aside** 39:3
**asked** 18:22 20:14 32:19 33:5,6 34:9,9
**asking** 18:22 42:1 54:18
**aspect** 40:3 44:13 47:1
**aspects** 39:6
**assessment** 50:16
**assigned** 47:10
**assignments** 47:12
**assume** 15:2 29:23 30:6
**assuming** 40:3
**attached** 16:10
**attempting** 36:13
**attention** 35:11 37:25 58:4
**attorney** 2:13 3:4,11 4:2 18:4 28:13 35:6 38:18 42:8 43:5 44:1
**attorney's** 46:1
**avenue** 3:5,12
**avoidance** 24:16
**awaiting** 41:18
**award** 26:9
**awarded** 22:20 22:21 26:5,8 40:25
**aware** 47:1 55:21

**b**

**b** 1:21 20:3
**back** 6:23 10:22 11:2 13:13 14:11 21:22 38:14 39:24 40:4 43:21 46:1 48:13 50:18
**ball** 46:2
**bandwidth** 35:5
**bank** 7:1 11:9
**bankruptcy** 1:1,12,23 8:18

8:18,23 13:8 21:5,14 22:5 24:23 37:12 38:11,13
**base** 33:23
**based** 56:11,22
**basis** 41:5
**began** 56:16
**beginning** 5:13 6:17
**behalf** 2:6 5:25 6:10 10:4 35:21 37:22
**believe** 14:1,19 20:19 31:9 32:10 39:25 40:1 44:16 53:3 57:2
**believed** 11:22
**benefit** 27:3
**best** 13:17 33:15 45:9 53:9,18 55:13
**bet** 55:13
**better** 29:17 58:17
**bill** 14:20
**bit** 33:5 45:25
**bluntly** 44:10
**bore** 20:10
**borrower** 7:4 26:25
**bottom** 38:22 40:2
**bowling** 3:19
**brief** 35:4
**briefing** 17:16
**briefs** 17:18
**bring** 37:24
**broadway** 4:3
**broker** 16:17 17:6 22:18,19 22:20 24:22 26:3,3 35:22 43:14
**broker's** 16:19 17:1 21:16 30:13
**brooklyn** 1:14
**brought** 6:18
**bunch** 15:17
**bush** 3:10 5:20 37:21 44:18 45:4
**business** 41:6

**c**

**c** 1:13 3:1 5:1 59:1,1
**cadman** 1:13
**calculated** 12:9 31:8
**calendar** 5:3 16:20,24 52:3 52:4 55:9 58:14
**called** 5:8
**calling** 5:2
**cancelled** 42:14
**capital** 2:4 3:11 5:19,21 45:5,11,12
**carried** 41:25
**case** 1:3 2:9,15 5:9 6:14,15,19 6:21 7:11 8:19 13:8,12 14:11 14:15 16:2 18:1,13 19:24 19:25 20:17 21:10 22:1,5,6 22:24,24 23:2 25:18,18,20,23 26:4,8,10,13 26:15 27:16,24 29:18 33:9,12 33:20 35:22 36:11,14,24 38:2,9 41:11 41:24 43:10,11 43:20 44:14 46:25 48:2,6 50:13 51:11 54:14 55:14 56:6,7,9,16 58:5,11,17
**cases** 56:23 57:25 58:8
**catherine** 15:22,25 16:1 21:12 24:17
**cause** 37:6
**caused** 58:3
**caveat** 32:9
**cc'd** 52:19
**central** 7:1 11:9
**certainly** 21:17 26:15 34:13 58:9
**certified** 59:3
**challenge** 8:21 10:23
**chance** 34:15 34:16 36:6
**change** 17:8 52:9 55:16
**changed** 20:14
**chapter** 14:14 32:15 56:7
**charges** 12:8
**checked** 51:15
**choice** 13:2,11 32:14
**choose** 36:13
**claim** 17:24 21:14 24:18 33:2 50:23
**claims** 9:14
**clarify** 51:5
**claw** 11:2 39:24 43:21
**clear** 34:8 36:3 42:17 46:20 55:24 57:14
**clearer** 42:13
**clearly** 41:14
**clerk** 5:2 6:3,5
**client** 22:13 44:1,2 49:15 49:16 51:12
**close** 32:17 43:5
**closed** 13:8,9 43:10 56:10

**closing** 2:5 14:21 15:6 20:8 27:12 40:10,12 43:1 43:2,4
**closure** 41:9
**code** 49:3
**colleague** 58:1
**colleagues** 55:11
**collect** 36:16
**collection** 20:2
**come** 9:23 33:22 44:12 50:18 51:16 55:10
**comfortable** 9:18
**coming** 41:13 46:1 51:25
**commenced** 7:14 8:1,2
**commercial** 7:2,23 8:2,4,4
**commission** 16:17,19
**commitment** 13:6,7 21:21 32:25
**communicati...** 31:25
**companies** 15:18
**company** 12:17 20:13 30:1 32:12,14
**compel** 2:4 5:10 20:20,24 22:2 36:7,23 39:9 40:10 41:16 43:16
**compensation** 2:12 5:10 17:3 22:11 36:22 57:19
**complete** 10:22 56:9
**compliance** 36:7 37:3 45:17
**complicated** 23:19 40:15
**comply** 2:5 40:10
**con** 14:20
**concern** 55:8
**concerns** 47:23
**concluded** 58:20
**condition** 12:20 34:5
**conditions** 13:7 34:3
**conduct** 38:23
**confer** 16:9 49:16
**conference** 2:1 5:9 23:9,10
**conferences** 41:19
**confirm** 9:8 14:1 16:4 21:6
**confirmation** 7:16,17,20 9:10 10:10,11 10:16,17,21 13:11,12,14,18 13:19,20 14:9 49:5,7 56:6,11
**confirmed** 7:9 7:11 13:19 14:6,7 49:10 49:11 56:10
**confirming** 9:18
**conflicting** 13:15
**confused** 38:16
**consensually** 52:8
**consent** 30:12 34:2 45:5,11 56:12
**consents** 16:12 21:13 24:10
**consider** 41:3
**consideration** 22:8
**considering** 34:6 39:23 57:11
**consolidated** 47:13
**constrained** 54:13
**consumer** 37:24 38:25
**contacted** 26:20
**contemplates** 39:15
**contested** 53:4 56:20,20
**context** 33:8
**continue** 16:8 18:8 22:24,24
**continued** 29:20 53:3
**conversation** 32:3
**convoluted** 39:14
**copy** 31:3 52:22
**correct** 6:2,7 11:3 20:21 23:23 32:10 40:19
**correcting** 39:5
**correctly** 15:22 35:24 37:25
**costs** 18:23
**counsel** 16:8,9 17:4 19:11 24:25 27:20 28:16,17 30:16 31:21,24 41:2 44:23,25 45:11 47:16 49:16 51:7,11 53:19 54:6,8,10,10 54:12 56:17
**counsel's** 47:22 53:20
**countless** 41:17

Case 1-24-43203-jtb Doc 200 Filed 03/23/26 Entered 03/23/26 14:52:29



**country** 59:21
**couple** 26:21 34:19 36:2
**course** 8:23 35:12 48:9 51:11 54:1 55:3
**court** 1:1,12 5:7,18,22 6:1,4 6:6,8,11,21 7:13,15 8:2,16 9:12,15,20,23 10:1,6,11,14 10:16,19,22,25 11:5,8,11,14 11:17,19,22,25 12:3,6,10,13 12:20,23 13:2 13:9,14,17,23 14:4,6,8,13,22 14:25 15:2,7,9 15:13,15,24 16:1,8,13,15 16:20,24 17:1 17:3,10,14,16 17:22,22,23,23 17:24 18:2,2,8 18:10,17,20,25 19:1,1,2,4,6,11 19:14,17,20 20:1,4,7,10,23 20:24 21:6,9 21:20 22:3,4,5 22:8,11,14,18 22:20,23,25 23:3,9,13,16 23:18,22 24:1 24:5,16,21,23 25:7 26:6,7,9 26:17 27:7,11 27:15,19,22,22 28:10,12,14,25 29:3,9,13,16 30:2,21,24 31:4,15,18,20 32:4,6,14,17 32:21 33:8,10 33:15,17,25 34:5,11,13,17 34:19,21,23 35:1,6,8,12,17 35:20,24,25 36:16 37:2,6 37:12,13,14,17 38:1,9,12,19 38:21 39:2,13 39:15,16,18 40:4,9 41:9 42:1,2,5,7,10 42:14 43:3,12 43:17,21,22,24 44:4,7,11,15 44:19,21,25 45:3,5,15,21 46:4,6,11,14 46:19,23 47:1 47:4,7,15,19 47:22 48:16,19 48:22 49:2,6,7 49:10,15,18,23 50:3,5,9,12,24 51:2,10,24 52:9,12,15,21 52:25 53:4,7,9 53:12,18,24 54:1,3,6,11,20 54:21,22,24 55:2,6,8 56:3 57:4,7,10,16 58:3
**court's** 43:8 53:20
**courtroom** 5:13 35:18 37:18 40:17 49:20
**courts** 20:3 56:1
**cover** 30:1
**covid** 7:9
**creating** 58:7
**creditor** 11:8 15:23 23:21 36:8,9 37:4,9,9 37:11
**creditors** 14:12 25:25 36:14 37:7,8
**critical** 31:23 39:3
**cross** 8:22
**cure** 7:8,18
**current** 14:2 15:2 30:9,10
**currently** 48:21,23
**cut** 22:1 27:24

**d**

**d** 5:1
**dan** 3:15 5:4 5:20 37:20
**date** 6:18 24:9 41:15 46:19 47:24 48:16 50:2 51:16,24 52:5 55:8,16 59:25
**dates** 9:5
**day** 7:17,19 9:6 32:25 37:23 38:11,17 45:10 51:22,25 55:18 55:21,22
**days** 24:21 34:19,23 36:4 36:20 41:14
**deadline** 48:16
**deadlines** 9:1
**deal** 7:12 16:4 21:13
**dealing** 50:20
**dealt** 20:2 21:10,11,12
**debt** 7:18 8:6,8 10:23,25 14:19 14:24 15:16,17 15:21,22 16:5 16:14 26:25 42:8,17,23
**debtor** 1:9 2:9 3:4 5:14,16,17 7:5,5 9:1,23,25 10:2,4 11:14 14:8,10 15:20 25:7,16,23 27:3,19 29:23 30:3 31:13,20 31:21,23,24

32:7 36:3,10 36:13 37:22 39:4 40:21 48:13,17 49:15 51:6,7,14 53:19,20 54:4
**debtor's** 18:4 25:8,9 26:10 26:24 27:11 28:13,15,16,16 29:5 31:21 41:2,16 48:13 51:7,9,11,12 54:7 57:21
**debtors** 37:8
**debts** 16:16
**decided** 20:20
**decision** 13:2 24:23 33:19 39:16 44:12 58:16
**decisions** 34:6 45:10 54:24,25
**declared** 39:17 39:24
**declined** 8:25 9:10
**deemed** 39:20
**default** 7:10
**demonstrated** 32:11
**denied** 8:11 17:13,15 36:5
**deny** 21:2 48:4
**denying** 48:12
**department** 3:17 23:25 24:3,4,6 56:2
**detailed** 55:23
**different** 15:18 33:5 34:10 42:3
**direct** 42:2,5,7
**disappointed** 55:16
**discharged** 39:20
**disclosure** 14:17
**discretion** 33:7
**discussing** 27:5
**dismiss** 2:9,15 5:10,11 14:10 16:11 19:24,25 21:9,10,25 25:23 37:6 39:8 40:21 41:5,11,24 48:1,2,2,4,5,24 49:21,24 50:5 57:17,20
**dismissal** 16:12 21:13 22:16 24:10,25 25:7,8,8 28:1,5 30:13 33:4,24 34:3,5 36:12 39:13 40:3,6 48:8,8,11 56:12
**dismissed** 7:11 13:9,10 16:3 18:1,13 22:5,7 22:7 23:2 25:18 27:16,24 33:1,6,9,12,20 36:11
**dismissing** 13:12
**dispute** 6:24 26:22 28:4 37:10
**disputed** 9:11 9:14
**disputes** 8:3,7 57:22,23
**district** 1:2 17:13,15 22:25 23:22 35:24 56:3
**division** 56:1
**docket** 18:14
**document** 24:16 46:7 48:25
**documents** 20:19 45:14
**dog** 39:10
**doing** 33:15 45:9 53:2,9 57:15
**dollar** 12:11 39:18
**dollars** 12:12
**donovan** 2:6 3:8 5:4,14,15 5:15 6:14,20 6:22,22 8:17 9:13,16,21,25 10:2,8,13,15 10:18,20 11:2 11:7,9,13,16 11:21,24 12:2 12:4,7,11,14 12:22,25 13:3 13:10,15,22,24 14:5,7,10,16 14:23 15:1,4,8 15:10,12,14,16 15:25 16:2,7 16:10,14,16,22 16:25 17:2,5 17:11,23,25 18:7,8,9,12,18 18:21 19:2,5,7 19:13,15,18,22 20:8 21:8,10 22:10,12,16,19 22:22 23:1,4 23:10,14,17,24 24:3,12,15,20 25:1,3,13 26:17,19 27:10 27:12,17,20,21 28:8,13,22 29:1,15 30:18 30:19,20 31:1 31:5,10 32:1,2 34:20 37:22 38:6,7 41:21 41:23 42:3,12 42:16 43:4 45:13,20 46:5 46:17,20,24 47:3,6,9,18 48:14,15 49:5 49:9,12 50:15 50:19,25 51:23

52:7,18 54:9 55:7 57:5,8,13
**donovan's** 44:5
**doubt** 24:17 29:9 58:17
**dramatically** 52:9
**drop** 46:2
**due** 39:1 43:25

**e**

**e** 1:21,21 3:1,1 5:1,1 59:1
**eager** 6:16
**earlier** 51:24
**early** 8:19
**easiest** 29:22
**east** 1:13
**eastern** 1:2
**easy** 29:22
**economy** 39:11
**ecro** 1:25
**ed** 14:20
**effect** 43:9
**effectively** 17:19
**effectuated** 47:13
**efforts** 20:15
**either** 8:25 9:2 9:9 13:16 17:21 42:5 44:16,17 48:3 48:4 51:16
**elizabeth** 1:22
**email** 31:10
**encourage** 49:15
**ended** 8:8
**ends** 50:17
**enforce** 20:4 21:19 26:9 37:2,12 47:5 47:10
**entered** 8:5 21:15 23:6 36:19
**entire** 8:12,13 39:18 56:11
**entirely** 20:23 50:20
**entitled** 7:5 26:22 27:4 39:25 42:11
**entity** 31:24
**entry** 18:19 36:4
**equity** 25:19 25:22 26:11
**equivalent** 21:18
**escrow** 44:1,22
**ess** 1:3
**essence** 9:16
**essentially** 8:25 14:18
**established** 12:18
**estate** 4:2 15:5
**estates** 1:7 2:6 2:10 5:3,8 24:19
**etienne** 1:7 2:6 2:10 5:3,8 24:19
**event** 10:5 12:14
**everybody** 6:12 16:18 23:14 28:23 54:18 55:25
**everyone's** 33:15
**evidence** 29:14 29:20 43:23 44:11 47:23
**example** 15:3
**excellent** 32:4 52:21
**excuse** 6:22 16:6,7 46:17
**expect** 45:17
**expenses** 18:23 19:9,16 56:15 56:16
**expire** 29:11
**expired** 29:5,7 29:8 32:25
**explain** 28:20
**extent** 19:8 22:3

**f**

**f** 1:21 59:1
**facie** 44:14
**fact** 7:22 25:13 28:16 42:8
**factual** 39:6
**fair** 55:11
**fairly** 40:15
**family** 7:7 15:19
**far** 57:18 58:7
**favor** 8:11
**february** 58:2
**federal** 33:10 55:20
**fee** 17:1 18:15 19:11 22:21 24:22,25 25:5 30:13,16 31:8 33:24 34:3,17 35:23 36:1,2,4 36:16 41:10 53:4 57:9
**feel** 48:10
**fees** 16:17 18:13,14 19:7 19:25 21:12,16 25:15,16 26:5 26:8,16,20,23 27:4,14 28:3 33:17 34:12 36:3,18,19 40:22,25 41:1 43:14 48:18 50:22 51:1,5,6 56:17,17,18 57:12
**felt** 33:7
**fight** 10:8,20 20:1 47:11,14
**figuratively** 32:22
**figured** 6:25
**file** 34:13 36:25 42:8 45:15,18 46:14 48:17 49:2

**filed** 2:5,9,12 2:15 8:9,18 17:9 18:13,14 18:24 20:14 22:12,14 32:14 34:17,18 47:14 56:16
**filing** 6:23 17:18 19:8 36:23
**final** 58:1
**financing** 49:13
**fine** 32:19 46:11,11 47:18
**finkel** 2:13 3:3 5:16
**firm's** 16:17 18:13
**first** 6:25 8:23 11:9 13:21 23:18,24 24:3 34:18,20 38:11 38:12 50:14
**five** 7:17 37:23 38:10
**fix** 19:24 20:16
**fixed** 8:5
**fixing** 8:8
**floor** 3:5,12
**flow** 31:13
**focus** 46:7
**follow** 31:5,19
**following** 45:22 55:12
**foreclosure** 7:14 8:1,5,14
**foregoing** 59:3
**forward** 7:22 8:20 11:18 14:3 54:17 55:5
**found** 7:16 11:3 37:23 56:21
**francis** 2:16 4:9 5:4,17,19 7:4,7 10:4 11:3 12:15 15:11,19 16:6 17:9 21:22 24:14 26:24 27:5,8 27:17,21 28:10 28:20,24 29:25 30:22,23 31:2 31:7,16,19 32:2,5,7,16,18 32:24 33:13,16 33:21 34:2,8 34:12,15,18,22 34:25 35:3,7,9 35:10 39:5,23 43:21 48:17,19 48:21,23 49:4 49:14,17 50:20 52:11,13,17,22 53:1,6,8,11,14 53:22,25 54:2 54:5,15,23 55:1,4 58:9
**francis's** 16:10 17:18
**free** 57:15
**french** 5:5,5 6:2 15:25 16:1 16:11 21:12 24:9,10,17,22 30:12
**french's** 15:22
**friendly** 15:23
**front** 13:25 17:20 38:5,23
**full** 9:7 10:7 11:11,12 24:18
**fundamental** 33:10
**funds** 20:2
**further** 17:16 18:1 29:3 30:18,19 35:9 35:13,15 39:17
**future** 57:15

**g**

**g** 5:1
**general** 11:19 56:22
**getting** 5:12 8:19 12:15 26:25 27:3 36:14 38:16 39:22 40:14 41:9 43:5,10 45:25 50:13 58:11
**give** 20:25 42:6 42:19 46:4,7 50:2 51:24 53:18
**given** 36:21 55:13
**gives** 44:7
**go** 6:23 8:20,24 9:16 10:22 11:18 13:11 14:3,11 20:1 20:23 21:17,19 26:9 28:22 31:25 32:1,15 34:12 36:15,25 37:12 40:4
**goal** 29:19
**goals** 58:5
**goes** 31:13 32:25 33:2
**going** 6:21 7:22 8:13 13:12,16 16:3 28:7,20 35:23 41:11,24 43:11 45:16,18 48:2,2,4,4 51:12 53:21 57:12,14
**goldberg** 2:13 3:3 5:15
**goldstein** 2:13 3:3 5:16
**good** 5:7,18,24 6:9,12 30:7 31:20 32:6 35:19,20 37:20 52:21,25 58:19
**goodness** 38:19
**gotten** 12:11
**grant** 21:2 41:5
**granted** 17:5
**granting** 48:11

**grants** 21:12
**greatly** 52:8
**green** 3:19
**grounds** 48:3
**group** 4:2 6:10
**guided** 51:12
**guidelines** 31:14
**guys** 7:12

**h**

**half** 46:24
**han** 5:4 6:9 35:21
**handle** 43:2
**handling** 38:18
**hands** 43:5 47:22
**hanh** 4:6
**happen** 43:2 43:24
**happened** 17:2
**happy** 31:3
**hard** 10:3 12:17 13:4 21:4,21 48:23 51:19
**hear** 6:13,16 8:13 25:10 28:23 30:25 35:13,18 37:19 41:17,22 51:3 52:16
**heard** 8:11 17:19 27:5 30:18 40:17,18 40:18,19
**hearing** 2:1,4,9 2:12,15 7:17 7:19 9:10 13:24 20:21 23:7 50:2
**held** 8:4 39:19 44:1,16,17,22 47:17
**heloc** 7:1,22 10:25 11:2,6,7
**help** 38:2,8 55:24
**helpful** 23:19 29:17 30:24 32:23 37:18 41:12
**high** 13:5 18:23 21:21 41:20 43:17
**highly** 33:20 54:13
**holiday** 55:20 55:21
**home** 7:1,25
**homeowner's** 29:25
**hon** 1:22
**honor** 5:15,24 6:7,20 12:14 16:6 18:6 19:10,24 21:12 23:6 25:3,12 26:19 27:10 28:8,21 29:1,4 29:15 30:20 35:15,19,22 36:6,22 37:1 37:13,20 40:8 41:23 45:13,20 45:24 46:5,17 47:18,21 48:15 48:21 49:22 50:1,2,7,11,19 51:4 52:11 54:9 57:2,6
**honoring** 32:10
**hope** 28:6
**hopeful** 52:7
**hopefully** 29:21 30:7 56:12
**hour** 18:19 41:17
**house** 7:6 12:19,23 21:23 32:12
**huynh** 4:6 5:5 6:5,6,7,9,9 35:17,19,21,21 36:1 37:15 49:21,22
**huynh's** 22:13

**i**

**idea** 50:19 52:19
**immediately** 20:9
**importance** 31:22
**important** 21:20 43:9
**imposed** 30:8
**inappropriate** 30:15
**include** 56:14
**includes** 18:23 56:17,18
**including** 5:9 25:25 33:10
**incorrect** 20:15 37:23
**indebtedness** 39:19
**indicate** 28:3
**indicated** 24:10 27:7
**indicating** 18:15 47:17
**indiscernible** 16:22 19:4,19 23:16
**individual** 7:23 7:25
**individuals** 41:18
**initial** 8:10 17:15
**ins** 18:5
**insider** 15:17 15:18,21
**insolvent** 26:11
**insurance** 29:5 29:6,6,7,10,14 29:20,24,25 30:5 31:2,3 52:22
**integrity** 47:23
**intend** 14:8 57:8

Case 1-24-43203-jtb Doc 200 Filed 03/23/26 Entered 03/23/26 14:52:29



**intent** 10:22
**interest** 12:9 12:10,10 13:5 21:21 25:24 53:23,25 54:13
**interested** 6:1
**interests** 37:7,7 37:8
**interim** 44:22
**interrupt** 25:12
**invite** 48:9
**involved** 39:12
**irresponsible** 28:5
**issue** 11:16 12:3 18:4,12 19:25 26:19 27:23,24 28:7 28:9 29:5,22 29:22 32:7 36:21 43:9,9 47:7,11,25
**issued** 6:25 39:16
**issues** 7:3,9,12 12:4 20:10 21:11 23:11 41:8 45:6 50:21 52:8,10 53:15

**j**

**j** 2:6 3:8
**jackson** 51:18 55:17
**jeremy** 3:22 5:5,24
**jjam** 2:4 3:11 5:19,20 8:22 9:6,11 10:6,6 11:10,11,15 14:18 20:1,8,9 23:21 27:4 30:8 31:12 37:19,21 39:19 39:19 40:10 42:2 44:2,17 44:23 45:5,11 45:11 46:23 47:4
**jjam's** 10:5 44:25
**job** 53:20 58:18
**johanna** 2:16 4:9 5:4 7:4
**judge** 1:23 6:3 7:10,15 8:25 9:10,17 13:16 13:25 17:5,11 17:12,20 20:21 21:2 37:23 38:23 39:16 54:14
**judgement** 8:5 8:9,21 9:7 21:18
**judges** 36:24
**jurisdiction** 33:9
**justice** 3:17

**k**

**keep** 26:15 33:6 52:5
**keeping** 7:11
**kept** 46:25
**khodorovsky** 18:16 26:21 31:9
**kind** 44:12 52:19 56:25
**knew** 51:19
**know** 12:7 13:4 17:20 19:14 23:5 26:2,3,13 27:6 29:1 31:20 34:22 35:25 36:21 37:5 38:7 40:23 41:12 43:4 45:1 49:6 53:11
**knows** 12:10

**l**

**landing** 55:22
**language** 9:11 10:9,21
**late** 51:22,25 52:1
**law** 42:13 44:8 45:7
**lawyers** 58:8
**lay** 18:24
**leave** 6:17 21:2
**leaving** 25:25 37:18
**left** 5:5 6:3 20:16 41:14
**legal** 59:20
**lender** 11:5,7
**length** 43:11
**letter** 18:15 19:18 45:16,19 46:3,6,8,14,16 47:17
**level** 41:20 43:18
**leverage** 44:8
**liens** 39:20
**life** 7:7 21:23 21:24
**lift** 8:19,24
**lifted** 11:18
**lightly** 36:23
**likely** 33:20
**limited** 56:14
**line** 16:4 38:22 40:2
**list** 29:19,20 32:22 56:25
**listed** 7:4 26:25
**listen** 54:18,18
**literally** 32:21
**little** 33:5 45:24
**live** 12:16,19
**lived** 21:23
**llc** 1:7 2:4,7,10 3:3,11 4:1 5:3 6:9 35:21
**llp** 2:13 3:10
**loan** 7:1,2,5,23 7:23,24 8:4

10:3 12:17,20 13:4 20:18 21:4,22 27:7 27:11 37:24 38:25 48:23 49:5
**loaned** 15:19
**loans** 15:18
**location** 45:21
**long** 15:7 23:19 52:1 55:9
**longer** 58:7
**look** 6:11,12 13:20 34:16 50:15 53:6
**looking** 19:9 19:24 52:6 55:6,11
**looks** 37:6 55:18
**loose** 27:25 50:17
**lord** 7:10,15 8:25 9:10,17 13:16,25 17:5 17:11,12 20:21 37:23 38:23 39:16
**lose** 21:20
**loss** 25:21 41:18 52:3,4
**lot** 6:19 25:21 26:11 57:22
**lots** 5:11 56:22
**love** 50:14
**lower** 25:24
**luck** 28:6 52:21 58:19
**lurch** 26:1

**m**

**m** 3:15
**ma'am** 53:7,24
**made** 7:5 18:21 20:19 25:4 32:22 55:23
**make** 25:4 29:19 33:19 34:6 36:1 45:9 45:10,11 46:2 46:9 49:12 54:16,24,25 56:13 57:5,14 58:16,16
**makes** 38:13 51:13
**march** 1:16 23:20 24:19 45:17,22,25 46:1,9,11,12 46:12 47:16 59:25
**mark** 22:2
**marked** 40:13 42:14
**massively** 25:20
**matter** 1:5 11:19 33:9 34:7 39:13 40:5 51:13
**matters** 5:2,8 34:6 52:1,2,3 56:4 57:1
**mean** 45:6,7 51:25 53:24 55:3,10
**merits** 17:21 35:23
**messy** 23:19
**met** 39:22
**mic** 48:22 52:15
**michael** 44:17
**microphone** 31:1
**midnight** 58:2
**might've** 17:8
**mind** 32:10
**mineola** 59:23
**minor** 14:19 40:2
**minute** 19:23
**missed** 25:2
**missing** 25:14 28:3 55:17
**mister** 28:25
**mitigation** 41:18 52:3,4
**moment** 12:15 14:11 23:20 33:2 38:14 40:8 44:18 51:20 58:17
**monday** 45:22 51:22 55:12
**money** 10:3 12:17 13:4 15:19 21:4,21 31:12 32:8,8,9 39:25 43:21,25 44:2 48:23
**month** 40:5
**monthly** 28:3
**months** 26:21
**morning** 18:14 52:1
**mortgage** 6:24 7:22 39:1 45:13,15 46:22 47:13
**mortgages** 46:21 47:16
**motion** 2:4,9 2:15 5:10,10 5:11 8:22,25 16:10 17:6 19:23 20:5,20 20:20 22:2 36:5 39:7,8,12 39:22 40:10 41:16,17,21,22 43:16 48:1,3,4 48:5,12 49:13 57:17,20
**motions** 8:3 36:23 37:5 41:5 49:21,24 50:5
**move** 21:22 54:17 55:5 58:15
**moved** 8:19

**n**

**n** 3:1 5:1 59:1
**name** 15:24 27:8

**named** 29:23 30:3
**necessary** 22:3 50:17
**need** 6:18 14:14 16:4 21:3,4,11 22:4 26:16 28:17,22 29:7 30:10 33:17,18,19,22 34:12 36:7 39:17 40:24 42:19,22 45:1 45:10 48:7,10 52:15 54:6 55:23,25 56:13 58:15,16
**needs** 25:17 27:15,23 30:3 31:25 34:10 40:22 43:7 54:16
**negotiate** 28:18,19
**negotiating** 51:8
**neither** 48:11
**never** 6:25 9:17 12:5,11 20:18 42:4 47:12,13
**new** 1:2 3:6,13 3:20 4:4 6:14 6:15 9:22 14:16,17 42:25 57:25
**nominal** 32:12
**non** 12:18 15:17,21
**northgate** 4:2 6:6,10 22:13 22:14,18 35:22 36:15
**note** 8:23 11:10 25:3,4 32:24 39:4,5,23 43:19 44:13,15 44:22 45:15,21 46:6,22,25 47:4,9 57:1
**noted** 55:22
**notes** 42:9,10 42:24 43:1,6 45:13 46:21 47:10,16 53:1 55:23
**notice** 56:12
**noting** 41:17 57:17,20
**notion** 26:7
**notwithstand...** 7:15
**number** 7:3 8:3 37:24 39:16 57:23
**numbers** 11:20 19:16
**numerous** 8:7
**ny** 1:14 3:6,13 3:20 4:4 59:23

**o**

**o** 1:21 5:1 59:1
**objection** 39:8 44:23 50:21,22 50:25
**objections** 7:20 22:12,14
**obligation** 31:21 51:11
**obligations** 2:5 40:11 51:14
**observation** 27:22 56:22 57:6
**obstacles** 56:25
**obtain** 45:12
**obviously** 47:25
**occasionally** 56:19
**occupied** 7:6 12:18
**occurs** 40:4
**offer** 56:21
**office** 3:18 5:23 52:18
**official** 58:1
**officially** 38:14
**oh** 5:5 24:15 38:19 54:11
**okay** 5:6 11:25 12:6,25 13:23 15:14 16:16 17:11 18:9,12 24:15,20 27:15 31:18 32:6,24 33:13,21 34:21 35:1,8,12 38:21 39:2 46:13 49:14,17 50:4 51:19 52:13,20 53:8 53:22 54:2,21 55:1
**old** 59:21
**once** 11:17 45:22 48:16 56:16
**oops** 18:20,21
**open** 18:12 26:15 41:11 43:11 48:6 55:18,21
**operating** 27:13 28:3
**operation** 33:10
**opportunity** 35:2 36:7 37:1
**opposed** 48:9
**opposition** 43:18 48:18,18
**options** 9:19
**order** 7:16 9:11 10:10 12:17 13:19,20 17:23 18:1 20:4 21:15 23:7 24:23 30:15 35:23 36:2,4,8,22 37:2,3,13 39:17 45:18 49:7 56:9

**ordered** 17:22 46:16
**orders** 10:11 10:16,17,21 13:15,25 28:1 28:2 36:19 40:1
**original** 20:18
**originally** 17:7 31:8
**outcome** 38:24
**outlining** 53:15
**outs** 18:5
**outset** 27:8
**outside** 21:14
**outstanding** 41:8
**overlook** 57:1
**overpaid** 23:22 24:7 30:8
**overpayment** 11:3
**owed** 11:23
**owes** 25:16 51:6
**own** 12:19,23 42:9
**owner** 12:18 51:9
**owners** 7:25
**owning** 9:24 10:1
**owns** 9:25 12:16 15:19,19 32:12

**p**

**p** 3:1,1 5:1
**p.m.** 1:17 55:14
**paid** 9:7 10:5,7 11:11,12,22 14:18,20,22,23 16:3 17:6,21 18:3 19:8 21:16,17 22:17 23:21 24:6,8 24:11,12,14 25:17 26:16 27:1 28:4 30:8 30:13 31:12 32:8 33:2 36:3 36:6 40:22 42:8,12,23 43:19 44:3 58:4
**panel** 8:12,13
**papers** 20:14
**park** 3:5
**part** 8:2,4 14:20 41:9 44:13 47:11
**participating** 30:25
**particularly** 26:10
**parties** 9:14 18:5 30:17 31:15 35:14 40:24 41:7 45:8
**partner** 44:17
**party** 6:2 29:24 30:4 32:2 53:22,25 54:13
**passage** 6:18 57:16
**past** 12:15
**path** 31:6 50:13 58:6
**pay** 9:3 15:2 21:15 24:15 27:13 36:14,19
**payee** 29:23
**paying** 12:19 28:10
**payment** 27:3 50:21
**payments** 7:10 43:14
**pays** 42:17
**pending** 8:10 11:17 17:12,13 20:5 22:25
**people** 30:25 52:15
**perception** 44:7
**perfected** 17:17
**permission** 48:25
**permit** 40:1
**permitted** 49:2
**person** 42:7,17
**personal** 7:23 32:9
**perspective** 25:2
**petition** 14:24 14:25 15:3,16 16:14 19:5,7 24:7,8 30:9
**phone** 20:6
**pick** 36:13
**picture** 25:1 41:9 51:2
**piece** 25:14 43:23
**place** 7:11 9:6 30:7 55:9
**plan** 7:8,11 9:8 9:9,18,22 13:18 14:1,4,7 14:9,16 16:4 21:7 56:7,8
**plane** 38:18 45:25
**played** 20:1
**plaza** 1:13
**please** 5:13
**plenty** 58:8
**plus** 7:18 19:15
**pm** 58:21
**podium** 28:22 30:24
**point** 9:8 10:3 10:22 13:11 21:3 22:1 30:21 39:11
**pointed** 18:18 36:17
**points** 36:2
**position** 25:17 27:2 51:6 54:19,20 55:3

**positions** 54:22 54:25
**possession** 42:23
**possible** 38:17 58:6
**post** 14:25 15:3 24:7,8 49:5
**practice** 42:25
**pre** 14:24,25 15:16 16:14 19:5,7 24:7 30:8
**precedent** 36:17
**predecessors** 47:8
**prefaced** 33:4
**prejudiced** 37:4,11
**preliminary** 23:7
**premises** 12:18
**prepared** 28:2 41:6
**prepetition** 14:18
**present** 4:8 5:16
**prima** 44:14
**principal** 5:17 25:8 28:15 31:23 36:10 48:14 51:12 54:3,7 57:21
**principle** 44:17
**prior** 19:8
**probably** 20:22 23:9 29:22 52:4 55:13 58:2
**problem** 33:3 40:6 46:24 58:11
**procedurally** 36:24
**procedures** 7:24
**proceed** 41:5,7
**proceeding** 40:3
**proceedings** 58:20 59:4
**process** 13:5 33:12 43:25 47:24
**professional** 26:8 41:1
**professionals** 36:18
**progress** 45:9
**promptly** 41:7
**proof** 29:6,7
**proper** 12:8 42:4,6 46:3
**properly** 12:9 47:12
**property** 7:6,6 7:24 9:2,24,25 10:1 12:16,16 21:4 25:20,20
**proposed** 10:14,17 28:2
**protect** 7:25 44:11
**protected** 29:24
**provide** 20:9 31:4,5
**provided** 20:11
**provides** 42:7
**provisions** 7:24 42:6
**public** 11:20 18:25
**publishers** 19:3
**purchased** 8:23
**purpose** 8:18 39:21 56:8
**pursue** 14:8 22:3
**put** 27:12 34:3 48:24
**puzzle** 25:14

**q**

**q1** 41:14
**quantified** 12:5
**quarter** 41:13 50:14 58:13
**question** 23:22 24:2 28:15,16 29:2 30:16 31:10 40:9,23 41:11 52:11
**questions** 30:13 37:16 48:6 54:12
**quickly** 23:6 37:21
**quite** 6:25 29:8

**r**

**r** 1:21 3:1 5:1 59:1
**raise** 25:13
**rate** 13:5 25:24
**rather** 7:1,2,23 27:17 28:11
**reach** 33:18
**reaction** 23:1
**read** 24:9
**readily** 23:11
**reading** 24:16
**ready** 22:6
**real** 4:2 7:24 15:5
**really** 11:24 39:22 40:1,7 51:7,20
**realty** 6:10
**reason** 22:23 23:5 25:25 26:15 27:8 29:9
**reasons** 6:24
**reassigned** 38:3
**recall** 17:10 19:4 37:25
**recap** 40:21
**receipt** 24:18 39:18
**record** 5:13 11:20 12:1,3 28:18,19 33:16

38:1,4 40:14 40:15,16 45:18 47:2 49:16,19 53:13 55:24 56:11 57:14,24 59:4
**reduced** 17:6
**reducing** 18:15
**reduction** 26:4
**reductions** 18:21
**referee's** 8:7
**refile** 22:2
**refinance** 9:2 9:18 13:6,7 25:24 49:1
**refinanced** 10:2,4 47:3
**refinancing** 9:6 14:21 21:20 26:23
**regular** 46:1
**regularly** 38:18
**reinstatement** 7:8
**relieve** 47:23
**relitigate** 44:13
**reluctant** 55:10
**remain** 52:7
**remaining** 15:17 16:13
**remains** 29:17
**remedy** 39:15
**remember** 9:5 11:25 12:1 15:22 44:18
**remotely** 30:25
**renewed** 29:7 29:10,13,14 30:6
**repeatedly** 39:24
**report** 8:8 27:13
**reports** 28:3
**represented** 27:19 31:21,24 53:19
**request** 5:11 18:15 25:5
**required** 20:19
**requirements** 55:13
**reserve** 57:8
**reserved** 19:9
**resigned** 54:10
**resolvable** 23:11
**resolve** 31:11 43:13 52:19
**resolved** 15:5,6 18:2 22:4 27:15 33:18,19 43:7 48:7 52:8 55:15 58:12
**resolving** 28:6
**respect** 6:17 7:10 26:3,15 26:20 28:9 31:2,7 32:18 37:5 40:9 45:21 48:1 51:5,8 52:17 53:1 54:15,19 54:19,21
**respectfully** 33:1
**respond** 43:18 44:5
**response** 26:18 34:14
**responsible** 52:5
**result** 56:21
**retained** 17:4
**retirement** 58:1
**review** 23:18
**reviewed** 57:24
**rice** 3:10,15 5:4 5:19,20,20,20 18:6 20:6 37:19,20,20,21 38:4,7,10,16 38:20,22 39:3 40:18 43:18,20 43:23 44:2,6 44:10,16,20,24 45:2,4,24 46:9 46:13 47:21 50:5,9,11
**rid** 21:3 36:14
**right** 5:19,22 6:1,11,13 9:12 10:14,18,19,20 11:1,13,16 12:22,25 13:3 14:23 15:4,10 16:21 17:2,5 17:22 19:9,22 24:5 26:17 28:18 30:4,21 31:4 34:24 35:8,17 37:14 37:17 42:15 43:17 44:15,19 45:2 47:20 49:9,20,23 50:4,12,24,24 51:2 54:11,11 57:4,17
**rights** 20:3 57:8
**rita** 2:25 59:3,8
**road** 23:19 42:20 59:21
**role** 54:13 55:2
**room** 3:19
**rough** 19:16
**roughly** 17:7
**routinely** 28:1
**rubin** 4:1 6:9 35:21
**rule** 8:25
**ruled** 38:24
**rules** 49:3

**s**

**s** 1:22 3:1,22 5:1
**sake** 55:24
**sale** 8:14,24 9:4,5,6,17
**satisfaction** 20:9,12 24:18 42:5,6,9 47:14

Case 1-24-43203-jtb Doc 200 Filed 03/23/26 Entered 03/23/26 14:52:29



**satisfactory** 30:6
**satisfied** 39:20 41:4 48:8
**saves** 51:21
**savings** 7:1 11:9
**saying** 12:8 16:11 28:6,9 36:19 58:18
**says** 39:19 42:24 44:12
**schedule** 48:19
**scheduled** 8:14 9:4,5 52:2,2
**scheduling** 51:18,20 52:10
**screen** 6:12 37:18
**second** 6:23 8:15,18 13:21 13:22 24:3,6 56:2
**secondly** 37:25
**securely** 47:17
**see** 13:20 23:4 23:21 40:6 47:19,20 50:13 56:8
**seeing** 11:25 12:3
**seek** 10:23 11:2 17:3
**seeking** 21:6,8 21:9 26:23 47:4,9
**seeks** 25:7,8
**seem** 22:23 55:11
**seems** 9:15 22:24 23:10 25:1,8,10 27:23 30:9 40:12,20 45:6 47:7 53:5 55:25 56:13
**seen** 31:16
**sell** 9:2
**send** 31:3
**sense** 14:13 29:17 38:13 43:20 51:14 56:13
**sent** 31:10 39:13
**separate** 47:10 54:6,9
**september** 29:12
**series** 9:1 12:4
**serious** 45:6
**serve** 56:8
**set** 17:16 48:19
**sets** 48:16
**setting** 36:18
**seven** 36:3,19 46:21
**several** 7:19
**she'll** 21:13 24:12
**short** 44:6
**should've** 18:19 33:1
**side** 25:9 43:9 43:9
**sign** 9:10 13:16 28:1,5 39:4
**signature** 59:6
**significant** 25:19 26:4
**simply** 39:12
**sitting** 52:20
**situation** 20:17 28:21 41:10
**six** 18:19,19 46:21 47:10
**slightly** 34:9
**smoothest** 58:6
**sold** 11:10 25:21
**solutions** 59:20
**solving** 58:10
**somewhat** 31:13
**soon** 28:25
**sooner** 29:21 58:11
**sorry** 15:24 24:1,4 25:12 34:11 38:12 50:2
**sorts** 20:10,15
**sought** 8:10 9:8 17:7,11,12,13 26:20 41:1
**sounds** 26:17 43:25 57:18
**speak** 31:1 52:14,18
**speaking** 31:9
**specifically** 7:15 12:5 19:18
**spectacular** 57:23
**speed** 38:2 57:25
**spirit** 36:13
**stage** 12:15
**stand** 16:25
**standard** 42:25
**start** 9:21
**started** 20:17
**state** 7:13,14 10:22 11:17 14:2 18:2,24 19:1,2 20:2,23 20:24 21:19 22:3,4 26:9 36:16 37:12 39:13,15,21 40:4 42:25 43:21 48:9,10 48:10 53:12
**stated** 13:25 35:24
**statement** 14:17 16:11
**states** 1:1,12 3:18 5:23,25
**stating** 53:14
**status** 2:1 5:9 6:13 13:14,17 27:6 40:19 41:14,18 45:15 45:19 46:8,14

47:17 55:17
**statute** 20:24 39:14,21 42:7 42:17,23
**statutory** 2:5 40:10
**stay** 8:9,11,16 8:17,19,20,24 11:17 17:12,13 17:19 36:4,5 43:11
**stayed** 36:2
**step** 44:22
**stong** 1:22 21:2
**straightforw...** 46:15
**strangely** 55:18
**stroke** 58:2
**strong** 25:17
**structural** 51:13
**structured** 36:12
**stuck** 21:21
**stuff** 14:20
**subject** 22:8 24:23 33:9
**submission** 24:9
**submit** 13:19
**submitting** 46:3
**substantially** 13:5
**suggest** 52:5
**suggestion** 56:22
**suing** 20:24
**suite** 4:3 59:22
**summary** 53:19
**supports** 44:9
**supreme** 8:2
**sure** 29:13 30:10 36:25 38:4 44:8 46:2 51:4 54:16
**surprised** 19:6
**sussman** 3:22 5:5,22,24,25 25:11,12 26:7 29:3,4,12 30:4 35:13,15 40:18 49:24 50:1,4,7 51:3,4 57:1,2

**t**

**t** 59:1,1
**table** 25:10
**tables** 6:12
**tail** 39:9,9,9
**take** 36:23 54:22
**taken** 51:6
**takes** 46:15
**talk** 14:11 18:5 19:23 49:18
**taxes** 14:20 15:6 30:10
**technically** 36:12
**ted** 2:6 3:8 5:4 5:15 6:22
**teed** 11:16
**tell** 13:18 16:23 23:17 36:15 55:10 58:8
**ten** 24:21 34:23
**tend** 33:8 40:22 51:10
**tendered** 43:25
**tenths** 18:19
**terms** 33:22 39:7,8 46:2 58:10
**thank** 5:7,18 5:22 6:11 23:18 26:16 29:16 35:8,15 35:17 37:17 43:17 49:23 50:7,12 51:9 53:1 54:22 57:3 58:18
**thing** 14:21 20:8,16 33:21 39:4 41:2 42:9 48:6 56:7 57:11
**things** 5:11 6:19 15:4 18:16 20:25 23:6 30:11 32:15 37:22 42:4 50:14 55:15 56:13,18 56:24
**think** 6:14 10:12,19 22:6 26:2,3,11 27:13,16 29:7 30:4 32:10,19 36:16 37:6,22 39:11 40:7,18 40:24 41:23 43:7,15 44:21 51:15,20 58:10
**thinking** 7:18 55:12
**thought** 20:20 23:2 41:20
**three** 43:13 47:20
**tied** 50:17
**time** 6:18 8:13 17:19 18:10 29:8 35:10 43:8,12,16 45:25 46:4,15 47:11 50:16,17 51:21 55:13 57:10,16
**title** 20:13 32:12
**today** 16:20 19:10 23:5,12 24:25 25:1 41:4,24 43:7 48:2,10,12 52:4,23 57:11
**toggle** 9:9,20 14:2
**told** 37:12 39:6 51:23,23
**tomorrow** 17:18

**took** 9:6 12:20
**top** 36:23 56:25
**total** 19:20
**toward** 41:13
**transcribed** 2:25
**transcript** 7:16 59:4
**transferred** 57:25
**transpire** 54:17
**treat** 12:23
**trial** 7:17 37:23 38:11,23,23,24
**troubling** 26:12
**true** 59:4
**trust** 45:6,7,7
**trustee** 3:18 5:23,25 25:6 25:15,16 26:1 26:16,20 27:14 31:7,8,14 32:5 36:17 43:14 50:22 51:5 52:13,17 56:18
**trustee's** 52:18
**try** 38:2 39:24 40:14 53:8,16 57:24
**trying** 13:6 14:13 21:25 23:6 53:15 54:16,23 55:4
**turn** 42:24
**turned** 20:11 20:18 42:16 43:1
**turns** 55:20
**two** 10:11,14 10:17 11:20 13:21 16:16 40:5 42:3 43:15 52:3
**type** 33:22

**u**

**u.s.** 1:23 3:17 25:5,14,16 26:1,16 27:14 36:16 43:14 50:22 51:5 52:13,17 56:18
**u.s.t.** 28:2,14 29:20 30:3 31:5 33:17 35:13 40:22 41:10
**ultimate** 39:13
**ultimately** 7:10 7:21 9:4 20:11 20:16
**under** 20:24 25:21 39:1 53:9
**underlying** 8:21
**understand** 13:17 25:23 26:13 28:8 33:11,13,25 36:10,11 53:15 54:5,23 55:3,4 57:13
**understanding** 25:19 52:23
**understood** 54:16
**unfinished** 41:6
**unfortunately** 38:20
**united** 1:1,12 3:18 5:23,25
**unknown** 1:25
**unpaid** 56:14
**upshot** 8:3
**urge** 31:25 41:7 54:7 58:10
**urgently** 33:11
**use** 18:25 19:2
**useful** 56:7
**usual** 31:5
**usually** 52:18 56:21
**utilities** 15:3 30:10

**v**

**v** 4:6
**value** 58:7
**various** 35:14
**veritext** 59:20
**versus** 12:12
**view** 21:3 22:1 25:10 33:20 41:6 42:18
**violation** 37:3

**w**

**waive** 13:11
**waived** 19:5,7
**want** 16:22 21:17 22:17 25:4 28:24 32:24 36:1,17 39:4 42:5,9,19 43:8,12,16 44:10 51:4 57:14
**wanted** 9:21 25:13
**wants** 14:10 25:23 36:14 39:24 43:21 58:9
**washington** 1:7 2:6,10 5:3 5:9 24:19
**waste** 43:8,16
**water** 25:21
**way** 11:19 14:2 21:17 23:12 30:24 32:1 33:4,5 36:25 51:20 55:15 56:15
**ways** 6:23
**we've** 6:25 12:5 29:23 40:17,17,18,19 51:6
**week** 29:21 43:15 45:17
**weekend** 45:23

**weeks** 17:17
**weltsch** 2:25 59:3,8
**went** 44:2
**weprin** 2:13 3:3 5:16 33:5 33:23
**wide** 55:21
**willful** 37:3
**willing** 16:2
**wish** 28:6 33:11
**withdrawn** 22:2
**word** 23:9
**work** 7:12 14:14,14 16:3 24:13 26:4,8 29:19 55:23,25
**worked** 28:14 28:17
**working** 13:19 31:15 32:22 56:1,5
**worry** 18:11 30:18
**worst** 20:16,17
**worth** 19:15
**would've** 34:23
**write** 14:16,17 46:15
**writing** 34:25 35:3
**wrong** 23:17

**x**

**x** 1:4,10

**y**

**yeah** 10:8,13 14:13 26:6 27:10 34:15 35:3 38:16 42:21 44:10 45:2 49:12 57:16
**year** 15:8,9,12 15:13 30:9 33:1
**years** 15:20 38:5,10,14 46:25
**yesterday** 54:10
**york** 1:2 3:6,13 3:20 4:4 43:1

**z**

**zipes** 26:21 27:5 31:9